FILED IN CHAMBERS
U.S.D.C. - Atlanta

OCT 09 2014

James N. Hatten, Clerk

By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEVEN BIVENS,

        Plaintiff,

v.

BANK OF AMERICA, N.A.; SELECT
PORTFOLIO SERVICING, INC.; and
REAL TIME RESOLUTIONS, INC.,

        Defendants.

CIVIL ACTION NO.
1:14-CV-1569-ODE

ORDER

This action alleging violations of the Real Estate Settlement
Procedures Act ("RESPA"), 12 U.S.C. §§ 2605 et seq., is before the
Court on Bank of America, N.A.'s ("BANA") Motion to Dismiss
[Doc. 4], Select Portfolio Servicing, Inc.'s ("SPS") Motion to
Dismiss [Doc. 11], Real Time Resolutions, Inc.'s ("Real Time";
collectively, "Defendants") Motion to Dismiss [Doc. 7], and BANA's
Motion for Extension of Time to File Reply Brief [Doc. 20].

For the reasons set forth below, BANA's Motion to Dismiss
[Doc. 4] and Real Time's Motion to Dismiss [Doc. 7] are GRANTED.
SPS's Motion to Dismiss [Doc. 11] is GRANTED IN PART and DENIED IN
PART.  Also, BANA's Motion for Extension of Time [Doc. 20] is
DENIED.

I.   **Background**[1]

The instant action concerns the real property located at 651 Simmons Mine Circle, Sugar Hill, Georgia 30518 (the "Property") [Complaint, Doc. 1 ¶ 6].  On August 2, 2006, Plaintiff obtained two loans from Mortgage Lenders Network, USA in the principal amounts of $114,320.00 and $28,580.00 to finance the purchase of the Property [Docs. 7-2 & 7-3].[2]  The security deeds securing repayment of these loans were recorded on August 24, 2006 [Id.]. BANA represented itself as the servicer of both loans until 2012 [Doc. 1, ¶ 7].  SPS represents itself as the current servicer of the first loan for $114,320 and Real Time as the current servicer of the second loan for $28,580 [Id. ¶¶ 8,9].

---

[1]At this stage of the proceedings, the Court takes the following factual background from the well-pleaded factual allegations in Plaintiff's complaint and from the documents attached thereto.  See Next Century Commc'ns Corp. v. Ellis, 171 F. Supp. 2d 1374, 1378 (N.D. Ga. 2001) (Thrash, J.) ("In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construes them in the light most favorable to the plaintiff.") (citation omitted); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal . . . ."); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[2]The Court also considers the security deeds attached to Real Time's Motion to Dismiss [Docs. 7-2 & 7-3].  See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.  In this context, 'undisputed' means that the authenticity of the document is not challenged.").

### A.   *Procedural History*

On December 10, 2012, Plaintiff filed a "Petition to Establish Title Against All The World" seeking to quiet title to the Property in the Superior Court of Gwinnett County [<u>Bivens v. Mortg. Lenders Network (USA), Inc.</u>, No. 1:13-CV-3979-ODE (the "First Lawsuit"), Doc. 1-1 at 23-29]. Plaintiff filed an Amended Complaint in the Superior Court of Gwinnett County on September 18, 2013, asserting a quiet title claim, alleging violations of RESPA, challenging the assignments of the first security deed, and seeking a declaratory judgment establishing title to the Property [First Lawsuit, Doc. 7]. BANA timely removed the First Lawsuit to this Court [First Lawsuit, Doc. 1].

On December 9, 2013, Real Time filed a motion to dismiss the Amended Complaint [First Lawsuit, Doc. 13]. On May 6, 2014, this Court entered an Order dismissing with prejudice Plaintiff's challenge to the validity of the assignments and dismissing without prejudice his quiet title and RESPA claims [First Lawsuit, Doc. 36]. This Court also denied Plaintiff's request to amend his Amended Complaint [<u>Id.</u>].

On May 22, 2014, Plaintiff initiated the instant action against BANA, SPS, and Real Time, alleging violations of RESPA [Doc. 1].

### B.   *RESPA Framework*

Congress enacted RESPA in an effort to provide consumers with more information on the nature and costs of real estate transactions and to prevent consumers from falling prey to abusive lending practices. <u>See</u> <u>McCarley v. KPMG Int'l</u>, 293 F. App'x 719, 722 (11th Cir. 2008). To that end, RESPA requires a loan servicer

3

to respond to qualified written requests ("QWR") from a borrower. 12 U.S.C. § 2605(e). An inquiry constitutes a proper QWR when it: (1) includes or otherwise enables the servicer to identify the name and account of the borrower and (2) contains a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. Liggion v. Branch Banking & Trust, No. 1:11-CV-1133-WSD, 2011 WL 3759832, at *3 (N.D. Ga. Aug. 24, 2011) (Duffey, J.); 12 U.S.C. § 2605(e)(1). A QWR requesting information must seek information related to the servicing of the loan. Liggion, 2011 WL 3759832, at *3; Smith v. Bank of Am. Home Loans, 968 F. Supp. 2d 1159, 1170 (M.D. Fla. 2013) ("A written inquiry that does not relate to servicing is not a QWR." (internal quotation marks and citation omitted)). Servicing is defined by RESPA as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

Prior to January 10, 2014, a servicer was required to provide a written response acknowledging a borrower's QWR within 20 days (excluding public holidays, Saturdays, and Sundays) and to respond substantively within 60 days (excluding public holiday, Saturdays, and Sundays), providing the borrower with the "information requested . . . or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. §§ 2605(e)(1),(2) (2011).

4

On January 10, 2014, the Dodd-Frank Amendments to RESPA became effective and shortened the acknowledgment deadline to 5 days and the substantive response deadline to 30 days.[3] 12 U.S.C. §§ 2605(e)(1), (2).

A servicer who fails to respond in a timely and adequate manner is liable for actual damages suffered "as a result of the failure" and potentially for statutory damages "in an amount not to exceed $2,000" "in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1).

### C.   Factual Background

The facts underlying Defendants' alleged RESPA violations, as pled by Plaintiff, are outlined below.

#### 1.   Correspondence with BANA

On December 2, 2011, Plaintiff caused to be sent to BANA by Home Advocate Trustees LLC a document titled "Note Challenge," demanding production of the original note and a chain of assignments establishing BANA's standing to foreclose [Doc. 1-1; Doc. 1 ¶ 11]. Plaintiff contends that this correspondence constituted a QWR within the meaning of RESPA [Doc. 1 ¶ 10].

BANA responded on January 19, 2012 and stated that while it could not provide Plaintiff with the original note it enclosed a copy and provided information as to the current owner of the note (Wells Fargo) [Doc. 1-2 at 5-6; Doc. 1 ¶ 13]. BANA sent a follow-

---

[3]The Dodd-Frank Amendments to RESPA provided that they "shall take effect on the date on which the final regulations implementing such section take effect" 12 U.S.C. § 2605 note (Effective and Applicability Provisions). Such regulations were implemented on January 10, 2014. 12 C.F.R. § 1024.36; Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1145 n.3 (10th Cir. 2013).

up response through counsel on March 16, 2012 stating again its reason for being unable to produce the original note, providing a payment history covering BANA's period of servicing, and declining to provide the chain of assignment as beyond the scope of a QWR under RESPA [Doc. 1-2 at 7-8]. Plaintiff alleges these responses were untimely and inadequate [Doc. 1 ¶¶ 12, 15-16].

On April 24, 2012, Plaintiff sent through counsel a letter entitled "Qualified Written Request Pursuant to 12 USC 2605" requesting (1) "a copy of all correspondence or other documents that were exchanged between Bank of America and Home Advocate Trustees," (2) "a copy of each notice of the transfer of the notes or loan servicing," (3) "information about how the amount of the monthly payment was determined each time that the monthly payment changed," and (4) "a statement showing all payments that have been made on the notes" [Doc. 1-3].

BANA responded through counsel on July 19, 2012, enclosing a copy of the payment history [Doc. 1-2 at 9-10]. BANA explained that the remainder of Plaintiff's requests exceeded the scope of a QWR under RESPA [Id.]. Plaintiff alleges that this response was untimely and inadequate [Doc. 1 ¶¶ 18-19,22].

Plaintiff also alleges that these responses indicate BANA has a "pattern and practice" of violating RESPA [Id. ¶ 23].[4]

_____

[4]Plaintiff attached to his Complaint a third letter from BANA dated January 27, 2014 which appears to be in response to a letter sent by Plaintiff on January 10, 2014 [Doc. 1-2 at 11-13]. However, Plaintiff does not make any allegations in his Complaint regarding BANA's handling of this letter [see Doc. 1]. Therefore, the Court does not consider this third letter in its disposition of BANA's Motion to Dismiss.

### 2.   Correspondence with SPS

On December 17, 2012, Plaintiff through counsel sent a letter intended to be a QWR to SPS in Salt Lake City, Utah, which asserted that SPS lacked standing to enforce the note on the first loan and that Mortgage Lenders Network, USA engaged in predatory lending practices [Doc. 1-4 at 1-3].  The letter also requested "a copy of all notices, disclosures and other documents related to this loan that you claim were provided to Mr. Bivens at the time of . . . closing," the identity of "the owner of the loan," a certified copy of the promissory note in its current condition, the identity of the current holder of the mortgage, a MERS Milestone Report, certified copies of every assignment, and information as to whether the note was sold separately from the mortgage obligation [Doc. 1-4 at 3-4].

On January 30, 2013, SPS responded saying that because litigation had been filed, the issue had been assigned to outside counsel [Doc. 1-5].[5]  Plaintiff alleges that this response was untimely and inadequate [Doc. 1 ¶¶ 26-27].

On January 22, 2014, Plaintiff caused to be sent through Rod Carnes[6] a letter requesting the identity of the current note-holder, a payment history, the account status, a current account balance and copies of any previous responses [Id. at 4].   On

---

[5]Neither party indicates if outside counsel responded and, if so, what response was given.

[6]According to Plaintiff's Complaint, Rod Carnes is the Deputy Commissioner of the Georgia Department of Banking [Doc. 1-7 at 4; Doc. 1 ¶ 28].

January 28, 2014, SPS responded enclosing a three-month payment history, a previous response informing Plaintiff of the status of the account, the current balance, and the identity of the current note-holder [Id. at 4].

On January 8, 2014, Plaintiff caused to be sent through Martin Wattenbarger[7] correspondence stating that Plaintiff has not been given the note-holder information on his loan and requesting to know why his first loan cannot be modified [Doc. 1-7 at 7]. SPS responded on February 12, 2014, stating that Plaintiff had filed a similar complaint to which SPS had responded on January 28, 2014 [Id.]. SPS enclosed that response [Id.]. SPS also stated that any additional information may be part of the ongoing litigation initiated by Plaintiff and encouraged him to reach out to SPS's legal counsel [Id.].

On February 14, 2014, Plaintiff caused to be sent to SPS through the Consumer Financial Protection Bureau a letter "requesting various different documents" and "an answer to [his] dispute" [Id. at 1]. SPS responded on February 27, 2014, stating that Plaintiff had lodged similar complaints on January 8 and January 22, 2014, SPS's responses to which were enclosed [Id.]. SPS also stated that any additional information may be part of ongoing litigation [Id.].

Plaintiff alleges that these three responses were inadequate and that they, along with the January 30, 2013 response, establish a "pattern and practice" of violating RESPA [Doc. 1 ¶¶ 29-30].

---

[7]According to Plaintiff's Complaint, Martin Wattenbarger is the press secretary to Congressman Rob Woodall [Doc. 1-7 at 7; Doc. 1 ¶ 28].

8

### 3.   Correspondence with Real Time

On July 17, 2012, Plaintiff through counsel sent Real Time a letter titled "Qualified Written Request Pursuant to 12 USC 2605" which requested (1) "[a] copy of all correspondence and documents to or from Home Advocate Trustees . . .," (2) "[a] copy of each notice of transfer of the notes or loan servicing . . .," (3) "[i]nformation about how you calculated the current monthly payment," and (4) "[a] statement showing all payments that have been made on the notes" [Doc. 1-8].

Real Time responded on July 26, 2012, informing Plaintiff that it received his inquiry and had begun researching his account [Doc. 1-9].

Real Time sent follow up letters on September 27, 2012 November 23, 2012, and January 18, 2013, each informing Plaintiff that additional time was needed to complete research on his loan [Doc. 1-10].

Real Time again responded on July 8, 2013 through counsel, this time enclosing a copy of the original security deed, a copy of the note, and a summary of the second loan [Doc. 1-11 at 1]. The response letter informed Plaintiff of the current owner of the note and that the loan was in default [Id.]. The loan summary showed the current balance of the loan as well as the accrual of twenty-five late charges [Id. at 12].

Plaintiff alleges that these responses were inadequate [Doc. 1 ¶ 36].

On January 24, 2014, Plaintiff through counsel sent a letter to Real Time utilizing a form from the Georgia Attorney General

Office's website, requesting Real Time produce thirteen different types of information [Doc. 1-12 at 3].

Real Time responded on April 24, 2014 informing Plaintiff that his letter did not constitute a QWR under RESPA as the requests were not related to the servicing of the loan [Doc. 1-13 at 1-2]. Real Time enclosed copies of the security deed for the first loan and its assignment to Wells Fargo [Id.].

Plaintiff alleges this response is untimely and inadequate [Doc. 1 ¶¶ 38, 40]. Plaintiff also alleges, that based on these two responses, Real Time has a "pattern and practice" of violating RESPA [Id. ¶ 41 ].

Plaintiff seeks actual damages for "paying investigators to try to find the requested information that Defendants did not provide" and "mental anguish," [id. ¶ 42] as well as statutory damages [id. ¶ 43].

## II.  **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." In ruling on the pending motion to dismiss, all of the well-pleaded factual allegations in Plaintiffs' complaint must be accepted as true and construed in the light most favorable to Plaintiffs. <u>Young Apartments, Inc. v. Town of Jupiter, Fla.</u>, 529 F.3d 1027, 1037 (11th Cir. 2008).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). More specifically, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

## III. Discussion

In order to state a claim for a violation of RESPA, 12 U.S.C. § 2605(e), Plaintiff must allege facts showing that:

> (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed to adequately respond within the statutory period of 20 days or 60 days,[8] and (4) the plaintiff is entitled to actual or statutory damages.

Sellers v. Bank of Am., Nat'l Assoc., No. 1:11-CV-3955-RWS, 2012 WL 1853005, at *7 (N.D. Ga. May 21, 2012) (Story, J.) (internal quotation marks and citation omitted). The parties do not dispute that each Defendant is a loan servicer. The Court will therefore examine each alleged RESPA violation to determine whether Plaintiff has alleged sufficient facts showing (1) that the QWR at issue was valid, (2) that the response was either untimely or inadequate, and (3) that Plaintiff is entitled to damages, either actual or statutory.

---

[8]The statutory period would be 5 or 30 days, respectively, for a letter sent after January 10, 2014, the date on which the Dodd-Frank Amendments to RESPA went into effect.

11

### A.   *BANA's Alleged RESPA Violations*[9]

Plaintiff's December 2, 2011 letter was not a valid QWR under 12 U.S.C. § 2605.   The letter requested the original note and a copy of all assignments to support its challenge that BANA lacked standing to foreclose on the note [Doc. 1-1].   However, such a challenge is not related to the servicing of the loan.   See Liggion, 2011 WL 3759832, at *3.   Accordingly, Plaintiff failed to plead sufficient facts supporting a RESPA violation with respect to his December 2, 2011 letter.

Plaintiff's April 24, 2012 was a QWR in part.   The April 24 letter requested copies of all correspondence between BANA and

---

[9]In considering BANA's Motion to Dismiss [Doc. 4], the Court also considers Plaintiff's Response [Doc. 13].   The Court does not consider BANA's Reply [Doc. 20-1], which was untimely filed.   BANA's Reply was due on July 14, 2014.   See LR 7.1(C), NDGa.   However, BANA did not file its Reply until July 21, 2014 [Doc. 20-1].

Under Federal Rule of Civil Procedure 6(b)(1)(B), "the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."   The burden is on the party moving for permission to act late to prove that the delay was the result of excusable neglect.   See Clinkscales v. Chevron U.S.A., Inc., 831 F.2d 1565, 1568 (11th Cir. 1987).   To prove excusable neglect, "a movant must show good faith and a reasonable basis for noncompliance."   In re PaineWebber Ltd. P'ships Litig., 147 F.3d 132, 135 (2d Cir. 1998) (citing 4B Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure: Civil § 1165 (3d ed. 2002)).   Also, a party's motion under Rule 6(b)(2) must "state with particularity the grounds for seeking the order."   Fed. R. Civ. P. 7(b)(1)(B).

BANA does not provide any reason for failing to respond within the required time [Doc. 20].   Therefore, BANA's Motion for Extension [Doc. 20] is DENIED.   However, the Court has briefly reviewed the arguments raised by BANA in its Reply [Doc. 20-1] and concludes that they would not alter the Court's disposition of BANA's Motion to Dismiss [Doc. 4].

Home Advocate Trustees and copies of the notice of transfer of the notes. Such documents are not related to "receiving any scheduled periodic payments from a borrower" pursuant to his loan. See 12 U.S.C. § 2605(i)(3). However, the inclusion of requests unrelated to loan servicing in a QWR does not obviate a servicer's obligation to respond to those valid requests for information that are related to loan servicing. See Patton v. Ocwen Loan Servicing, LLC, No. 6:11-CV-445-ORL-19DAB, 2011 WL 3236026, at *3 (M.D. Fla. July 28, 2011). Plaintiff also requested a payment history and information about how the monthly payment is determined, requests which are related to loan servicing as defined by the statute.[10] Alexander v. Bank of Am., N.A., No. 2:13-CV-00067-RWS, 2014 WL 106349, at *9 (N.D. Ga. Jan. 10, 2014) (Story, J.). Therefore, BANA had a duty under RESPA to respond to these two requests.

BANA failed to send an acknowledgment of Plaintiff's April 24, 2012 request within 20 days as required by the former 12 U.S.C. § 2605, but it did provide a substantive response within 60

---

[10]In his briefs, Plaintiff repeatedly argues that the Court should apply Georgia statutory law in defining "servicing" [see Docs. 13, 14, 15]. However, as the federal statute defines the term "servicing," the Court will not look to state law to supplement this definition. See Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 43 (1989) (holding that words and phrases contained in a federal statute are defined by reference to federal law); United States v. Kimbell Foods, Inc., 440 U.S. 715, 728 (1979) (holding that state-law definitions may threaten the policies or interests which a federal state is designed to serve); Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 98 (1991) (holding that state law definitions may disrupt Congress's desire for nationwide uniformity under a federal statute).

days [Doc. 1-2 at 9-10].[11]   This response addressed Plaintiff's request for a payment history by providing such a history that covered BANA's period as servicer, but it did not address Plaintiff's request for information about how the monthly payment was calculated [Id.].   Therefore, Plaintiff has sufficiently pled the first three elements of a RESPA claim with respect to his April 24, 2012 letter.

However, Plaintiff's claim against BANA fails because he has not alleged sufficient facts to show damages.   As to actual damages, Plaintiff alleges that he has "incurred actual damages, some of which include paying investigators . . ." [Doc. 1 ¶ 42]. Plaintiff's only factual allegation regarding these investigators is that he paid one to unearth information on the ownership of the note and the account balance [Id.].   However, BANA provided this information in its response letter.   Accordingly, any damages incurred from hiring an investigator were not caused by BANA's alleged failure to provide this information.

Plaintiff also alleges actual damages for "mental anguish as a result of the uncertainty caused by Defendants" [Id.].   While RESPA does recognize as recoverable non-economic damages such as emotional distress, such distress must be causally related to the violation at issue.   McLean v. GMAC Mortg. Corp., 398 F. App'x 467, 471 (11th Cir. 2010).   However, Plaintiff does not support this allegation of mental anguish with any facts [see Doc. 1]. Such a pleading is therefore merely conclusory.   See Iqbal, 556

---

[11]By the Court's calculation, BANA responded exactly 60 days after April 24, 2012, excluding Saturdays, Sundays and public holidays.

U.S. at 678. Further, Plaintiff has not alleged, nor does the Court see, how BANA's failure to provide him with information about how the monthly payment was calculated caused any distress-inducing uncertainty. Therefore, Plaintiff has failed to plead the requisite causal link between his emotional distress and BANA's alleged violation. See Habib v. Bank of Am. Corp., No. 1:10-CV-4079-SCJ-RGV, 2011 WL 2580971, at *4 (N.D. Ga. Mar. 15, 2011) (Vineyard, Mag. J.) adopted by 2011 WL 2580780 (N.D. Ga. June 29, 2011) (Thrash, J.) ("In the absence of any alleged causal link between the claimed damages and Bank of America's alleged RESPA violation, plaintiff has failed to state a RESPA claim.").

Plaintiff also alleges he is entitled to statutory damages because BANA's responses constitute a "pattern and practice" of violating RESPA [Doc. 1 ¶ 43]. Even if the Court agreed that BANA violated RESPA twice, as alleged by Plaintiff, two violations do not constitute a pattern and practice. McLean v. GMAC Mortg. Corp., 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009), aff'd, 398 F. App'x 467; In re Maxwell, 281 B.R. 101, 123 (Bankr. D. Mass. 2002).

Therefore, because Plaintiff has failed to sufficiently plead damages, a necessary element for a RESPA claim, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, BANA's Motion to Dismiss [Doc. 4] is GRANTED.

### B. SPS's Alleged Violations

#### 1. December 17, 2012 Letter

Plaintiff's December 17, 2012 letter to SPS was a QWR in part, as it included requests which were beyond the scope of

RESPA.  Plaintiff's challenge that SPS lacks standing to foreclose and his requests for documents provided at the time of closing, the Milestone Report, copies of any assignments, the identity of the owner of the mortgage, and information as to whether the note was sold separately from the mortgage do not relate to the servicing of the loan as defined by 12 U.S.C. § 2605 [Doc. 1-4]. See Liggion, 2011 WL 3759832, at *3; Jones v. Vericrest Fin., Inc., No. 1:11-CV-2330-TWT-CCH, 2011 WL 7025915, at *16-17 (N.D. Ga. Dec. 7, 2011 ) (Hagy, Mag. J.) adopted sub nom by Jones v. Home Mortg. Inc., 2012 WL 113556 (N.D. Ga. Jan. 12, 2012) (Thrash, J.); Smith, 968 F. Supp. 2d at 1170 (holding that requests regarding the validity of the debt are not related to servicing). However, Plaintiff's requests for the identity of the owner of the note and a copy of the note are sufficiently related to loan servicing [Doc. 1-4].  See Davis v. Greenpoint Mortg. Funding, Inc., No. 1:09-CV-2719-CC-LTW, 2011 WL 7070222, at *3-4 (N.D. Ga. Sept. 19, 2011) (Cooper, J.).   Therefore, SPS was obligated to respond to these two requests under 12 U.S.C. § 2605(e).

SPS failed to acknowledge Plaintiff's December 17, 2012 letter within the 20 days required under the former statute and was therefore untimely.   However, SPS did send a substantive response within 60 days [Doc. 1-5].   The response stated that because Plaintiff had initiated litigation regarding the loan, the issue had been assigned to outside counsel [Doc. 1-5].   The Court finds that such a response as alleged by Plaintiff is inadequate within the meaning of RESPA.  While RESPA permits a servicer to respond explaining "why the information requested is unavailable or cannot be obtained," 12 U.S.C. § 2605(e)(2)(C)(i), SPS's

response does neither. SPS does not indicate that the information is unavailable; it simply states that outside counsel is now handling the matter. Plaintiff having pled sufficient facts to support three of the four elements of a RESPA claim with respect to the December 17, 2012 letter, the Court turns now to whether Plaintiff has alleged damages.

As to actual damages, Plaintiff has alleged that he "incurred actual damages, some of which include paying investigators . . ." [Doc. 1 ¶ 42]. Again, Plaintiff's only factual allegation regarding actual damages is that he paid an investigator to find out information on the ownership of the note and the account balance [Id.]. Plaintiff requested information on the current ownership of the note in his December, 17, 2012 letter. SPS did not provide this information. Therefore, the Court finds that Plaintiff has pled actual damages resulting from SPS's failure to adequately respond to the December 17, 2012 letter.

Plaintiff has therefore pled sufficient facts to support a RESPA claim with respect to the December 17, 2012 letter.

### 2. January/February 2014 Letters

Plaintiff's January 8, January 28, and February 14, 2014 letters were not valid QWRs. As pled by Plaintiff, the three letters were each addressed to Wells Fargo rather than SPS and were sent to a Norcross, Georgia address rather than the correct Salt Lake City, Utah address for SPS, as indicated on Plaintiff's December 17, 2012 letter and SPS's response [Doc. 1-6; Doc. 1-4]. "Courts have dismissed RESPA claims where plaintiffs failed to properly send written requests to their loan servicers." Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 364 (E.D. Pa. 2013).

17

"Receipt at the designated address is necessary to trigger RESPA duties . . . ." Berneike, 708 F.3d at 1149; see also Malally v. BAC Home Loan Servicing, LLC, No. 3:10-CV-0074-JTC-JFK, 2010 WL 5140626, at *8 (N.D. Ga. Oct. 8, 2010) (King, Mag. J.) adopted by 2010 WL 5140031 (N.D. Ga. Dec. 13, 2010) (Hunt, J.). Because Plaintiff failed to send these letters to the correct servicer at the correct address, SPS's duty to respond was not triggered under RESPA. Therefore, Plaintiff has failed to plead RESPA violations with respect to the letters sent in January and February of 2014.

Thus, SPS's Motion to Dismiss [Doc. 11] is GRANTED IN PART as to Plaintiff's claim for RESPA violations with respect to his January and February 2014 letters and DENIED IN PART as to his RESPA claim based on the December 17, 2012 letter.

### C.   Real Time's Alleged Violations

#### 1.   July 17, 2012 Letter

Plaintiff's July 17, 2012 letter was a QWR in part as it included two valid requests related to loan servicing [see Doc. 1-8]. The letter's requests for copies of all correspondence between Real Time and Home Advocate Trustees and copies of the notice of transfer of the notes are unrelated to loan servicing. See 12 U.S.C. § 2605(i)(3). However, Plaintiff's requests for a payment history and for information about how the amount of the monthly payment is determined are related to loan servicing as defined by RESPA. See Alexander, 2014 WL 106349, at *9. Therefore, Real Time was obligated under RESPA to respond to these two requests.

Real Time acknowledged Plaintiff's request within 20 days [Doc. 1-9] and responded within 60 days to inform Plaintiff why

the information he requested was unavailable--additional research was still required [Doc. 1-10-].[12] Accordingly, Plaintiff has not pled sufficient facts to show that Real Time's response was untimely.

As to the adequacy of Real Time's response, it did not provide the information requested however until July 8, 2013, when Real Time provided the copy of the original note, the current owner of the note, and a loan summary [Doc. 1-11].  Real Time, however, failed to provide information regarding how the monthly payment was calculated.   The Court finds, therefore, that Plaintiff has sufficiently pled that Real Time's July 8, 2013 response was inadequate.

### 2.   January 24, 2014 Letter

Plaintiff's January 24, 2014 letter included requests for thirteen different types of documents and information [Doc. 1-12]. Of these thirteen requests, the Court finds that six of them relate to "receiving any scheduled periodic payments from a borrower   pursuant   to   the   terms"   of   the   loan. 12 U.S.C. § 2605(i)(3).  The servicing-related requests were for: (1) the name and address of the current holder and owner of the original note; (2) a complete payment history; (3) a breakdown of the amount of claimed arrears or delinquencies; (4) any and all fees and costs charged to the account; (5) all escrow items charged to the account; and (6) a copy of the note [Doc. 1-12].

---

[12]By the Court's calculation, Real Time responded within fifty-one days of Plaintiff's letter, excluding Saturdays, Sundays and public holidays.

Real Time was therefore obligated under RESPA to provide an adequate response to these six requests.

Real Time failed to either acknowledge or respond within the statutory deadlines.[13] Thus, Plaintiff has sufficiently pled that Real Time's response was untimely.

When Real Time did respond on April 22, 2014, it provided only a copy of the deed and assignment for the first loan, not the second loan for which it was servicer [Doc. 1-13 at 5 to 24]. The response also did not provide any of the servicing information requested [see Doc. 1-13]. The Court finds, therefore, that Plaintiff has sufficiently pled that Real Time's April 22, 2014 response was inadequate. However, the Court notes that much of the information requested by Plaintiff in 2014 was provided in Real Time's July 8, 2013 letter.

### 3. Damages

Having concluded Plaintiff has sufficiently alleged two inadequate responses by Real Time, the Court must determine if Plaintiff has sufficiently pled either actual damages resulting from these alleged violations or statutory damages. As to actual damages, Plaintiff's only factual allegation remains that he paid an investigator to discover the ownership of the note and the account balance [id.]. However, Real Time provided this information in its July 8, 2013 response. Thus, Plaintiff has

---

[13]Plaintiff's letter was sent after January 10, 2014. Therefore, the shortened deadlines of the Dodd-Frank Amendments were in effect, giving Real Time only five days to acknowledge the letter and twenty days to respond substantively.

failed to plead that these damages resulted from Real Time's alleged RESPA violations.

Plaintiff also alleges actual damages for "mental anguish as a result of the uncertainty caused by Defendants" [Id.]. However, as stated above, such a claim without supporting factual allegations is merely conclusory. See Iqbal, 556 U.S. at 678. Further, Plaintiff has not alleged how Real Time's failure to provide information regarding monthly payment calculations or its failure to produce information in 2014 that it had already provided in 2013 caused any distress. See Habib, 2011 WL 2580971, at *4. Therefore, the Court concludes that Plaintiff has failed to plead sufficient facts supporting his allegation that any actual damages resulted from Real Time's alleged RESPA violations.

Plaintiff also alleges he is entitled to statutory damages because Real Time's responses constitute a "pattern and practice" of violating RESPA [Doc. 1 ¶ 43]. Assuming arguendo that Real Time violated RESPA twice, as alleged by Plaintiff, the Court reiterates that two violations do not constitute a pattern and practice. McLean, 595 F. Supp. 2d at 1365; In re Maxwell, 281 B.R. at 123.

Therefore, because Plaintiff has failed to sufficiently plead damages, a necessary element for a RESPA claim, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted. Thus, Real Time's Motion to Dismiss [Doc. 7] is GRANTED.

## VI.  Conclusion

For the reasons stated above, BANA's Motion to Dismiss [Doc. 4] and Real Time's Motion to Dismiss [Doc. 7] are GRANTED. SPS's

Motion to Dismiss [Doc. 11] is GRANTED IN PART as to Plaintiff's RESPA claim based on the January and February 2014 letters and DENIED IN PART as to Plaintiff's RESPA claim based on the December 17, 2012 QWR. BANA's Motion for Extension of Time [Doc. 20] is also DENIED.

SO ORDERED, this ___09___ day of October, 2014.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE