```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF GEORGIA
 2                         ATLANTA DIVISION

 3

 4
      STEVEN BIVENS,              ) DOCKET NO. 1:14-CV-1569-ODE
 5                               )
             PLAINTIFF,          ) ATLANTA, GEORGIA
 6                               ) JUNE 4, 2015
             V.                  )
 7                               )
      SELECT PORTFOLIO SERVICING, )
 8    INC.,                       )
                                  )
 9           DEFENDANT.           )

10

11               TRANSCRIPT OF MOTIONS HEARING
                BEFORE THE HONORABLE ORINDA D. EVANS
12              SENIOR UNITED STATES DISTRICT JUDGE

13
      APPEARANCES OF COUNSEL:
14
      FOR THE PLAINTIFF:            WAYNE CHARLES
15
      FOR THE DEFENDANT:            ELIZABETH J. CAMPBELL
16                                  ALEXANDRA M. DISHUN

17

18    COURT REPORTER:              ANDY ASHLEY
                                   1949 U. S. COURTHOUSE
19                                 ATLANTA, GEORGIA  30303-3361
                                   (404) 215-1478
20

21

22    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
      PRODUCED BY COMPUTER.
23

24

25
```

```
 1                P R O C E E D I N G S

 2  (ATLANTA, FULTON COUNTY, GEORGIA; JUNE 4, 2015

 3  IN CHAMBERS.)

 4          THE COURT:  WELL, IN THE BIVENS' CASE, THERE ARE TWO

 5  PENDING MOTIONS TO COMPEL, AND THEY ARE THE SUBJECT OF THIS

 6  MORNING'S HEARING.  I HAVE READ THE PAPERS, AND I'M SOMEWHAT

 7  FAMILIAR WITH THE ISSUES, BUT I THOUGHT I WOULD START OUT BY

 8  THROWING IT OPEN TO YOU, MR. CHARLES, TO SEE WHAT ADDITIONAL

 9  ARGUMENTS YOU MIGHT WANT TO MAKE.

10          MR. CHARLES:  THERE ARE THINGS I FORGOT TO PUT IN

11  WHEN I WAS FILING IT.  THE BIGGEST THING IS I KEEP READING IN

12  THE OPPOSITION THAT THIS IS A SMALL CASE, A SMALL CASE.  IT'S

13  NOT A SMALL CASE.  IT'S A BIG ISSUE.

14          THE ISSUE IS WHEN PEOPLE ASK FOR INFORMATION FROM THE

15  SERVICER, ESPECIALLY IN A CASE WHERE THE SERVICER IS THE

16  SERVICER FOR A TRUST AND IT'S THE ONLY CONTACT THEY HAVE, THE

17  TRUST WON'T TALK TO THEM.  THE TRUSTEE WON'T TALK TO THEM, ONLY

18  THE SERVICER WILL TALK TO THEM AND WITH RESPA.

19          THE COURT:  WHAT TRUST IS INVOLVED MERE?

20          MR. CHARLES:  THE SASCO MLN 2007-01 TRUST.  WELLS

21  FARGO IS THE TRUSTEE.

22          THE COURT:  OKAY.

23          MR. CHARLES:  AND SO THE QUESTION IS HOW DO PEOPLE

24  GET INFORMATION, AND RESPA IS THE LAW PASSED FOR THAT, AND

25  THE --
```

1            THE COURT:  NOW I TAKE IT IT IS CORRECT THAT MR.

2    BIVENS HAS TWO MORTGAGES --

3            MR. CHARLES:  HE DOES.

4            THE COURT:  -- THAT ARE INVOLVED HERE?

5            MR. CHARLES:  ONLY ONE IN THIS CASE.  THE OTHER ONE

6    IS NOT -- THE SECOND MORTGAGE IS NOT IN LITIGATION AT THE

7    MOMENT.  THAT WAS DISMISSED.  THE REAL TIME RESOLUTIONS WAS

8    DISMISSED.

9            THE COURT:  OKAY.  I WAS TALKING ABOUT SPS.

10           MR. CHARLES:  JUST ONE, THEY HAVE ONE.

11           THE COURT:  THEY HAVE JUST ONE MORTGAGE THAT THEY ARE

12   SERVICING, AND THEY ARE SERVICING IT FOR THIS TRUST YOU'RE

13   SPEAKING OF?

14           MR. CHARLES:  WELL, SUPPOSEDLY.  THE INFORMATION IS

15   SORT OF LACKING.

16           THE COURT:  WHAT'S THE STATUS OF THE PARTICULAR

17   MORTGAGE IN QUESTION?  IS IT IN DEFAULT OR ANYTHING LIKE THAT?

18           MR. CHARLES:  IT'S IN DEFAULT.  IT'S BEEN IN DEFAULT,

19   AND MY CLIENT HAS BEEN TRYING TO GET BASICALLY THE INFORMATION

20   ON WHO HE'S IN DEFAULT WITH, WITH WHOM HE'S IN DEFAULT AND --

21           THE COURT:  DOESN'T HE GET LIKE PAYMENT CARDS IN THE

22   MAIL?

23           MR. CHARLES:  YES, MA'AM, BUT THOSE ARE FROM SPS, AND

24   SPS DOESN'T OWN THE MORTGAGE.  WHO DOES OWN THE MORTGAGE?

25   WELL, HE GOT A MORTGAGE WITH MORTGAGE LENDERS NETWORK BACK IN

1  06 I BELIEVE IT WAS, AND LIKE MY CLIENT, MORTGAGE LENDERS

2  NETWORK RAN INTO FINANCIAL DIFFICULTIES AND WENT BANKRUPT IN

3  2007.

4          THE COURT:  AND HAS YOUR CLIENT SENT A REQUEST TO SPS

5  ASKING THAT THE MORTGAGE LENDER BE IDENTIFIED?

6          MR. CHARLES:  WELL, THAT WAS THE SUBJECT OF THIS

7  REQUEST THAT YOU RULED ON WHERE HE ASKED FOR BASICALLY THE

8  INFORMATION ABOUT WHO OWNS MY NOTE, AND THAT INFORMATION WAS

9  NOT PROVIDED.

10          THE COURT:  IS THAT ONE OF THE SUBJECTS ON THESE

11  MOTIONS TO COMPEL?

12          MR. CHARLES:  OBLIQUELY IT IS.  THE ONE QUESTION THAT

13  WAS ASKED FOR WAS -- WELL, RESPA REQUIRES THAT THE ENTITY BE A

14  SERVICER OF THE LOAN.  SO THE QUESTION IS IS SPS THE SERVICER

15  OF THE LOAN.  IF IT'S NOT, THEN WE DON'T HAVE A CASE.

16          THE COURT:  RIGHT.

17          MR. CHARLES:  SO ONE OF THE QUESTIONS WAS PLEASE

18  PROVIDE INFORMATION SHOWING THAT SPS IS THE SERVICER OF THE

19  LOAN, AND THAT QUESTION AND THE RESPONSE TO THAT WAS NO

20  INFORMATION WHICH --

21          THE COURT:  IS THIS PART OF YOUR MOTION TO COMPEL?

22          MR. CHARLES:  YES, MA'AM.

23          THE COURT:  CAN YOU POINT ME TO THAT?

24          MR. CHARLES:  THAT'S THE VERY LAST ISSUE IN THE

25  SECOND MOTION TO COMPEL.

1          THE COURT:  OKAY.  IT LOOKS TO ME LIKE THIS IS

2    REQUEST NUMBER 8?

3          MR. CHARLES:  YES, MA'AM.

4          THE COURT:  PLEASE PRODUCE COPIES OF ALL DOCUMENTS

5    SHOWING YOU HAVE THE RIGHT TO SERVICE A LOAN TO MR. BIVENS

6    CONNECTED TO THE SECURITY DEED FILED IN GWINNETT COUNTY, BUT

7    YOU DON'T ASK THERE WHO'S THE LENDER.

8          MR. CHARLES:  NO, AND THE REASON IS BECAUSE THIS IS A

9    QUALIFIED WRITTEN REQUEST LITIGATION.  SO WHILE THE ELEPHANT IN

10   THE ROOM HERE IS WHO'S THE LENDER, THE ISSUE HERE IS JUST ARE

11   THEY THE SERVICER.  SO I'D REALLY LIKE TO KNOW ALL THAT OTHER

12   INFORMATION, I'D LIKE TO ASK FOR ALL THAT OTHER INFORMATION,

13   BUT FOR THE PURPOSE OF FINDING OUT WHETHER OR NOT --

14         THE COURT:  WELL, WE KNOW THEY'RE THE SERVICER

15   BECAUSE THEY SENT ALL THE DOCUMENTS -- I MEAN THE REQUESTS FOR

16   PAYMENT, DON'T WE?

17         MR. CHARLES:  WELL, WE ASSUME THEY'RE THE SERVICER,

18   AND THAT'S THE THING THAT GOT ME INTERESTED IN THIS CASE IS MY

19   CLIENT SAID I'VE BEEN ASKING FOR THIS INFORMATION, I CAN'T GET

20   IT.  I SAID OF COURSE, YOU CAN GET IT, AND HE SAID --

21         THE COURT:  WELL, WHY DIDN'T YOU ASK INSTEAD OF

22   SAYING PLEASE PROVIDE COPIES OF ALL DOCUMENTS, ET CETERA, WHY

23   DIDN'T YOU JUST SEND A REQUEST FOR AN INTERROGATORY THAT JUST

24   SAID WHO IS THE SERVICER WHO -- EXCUSE ME, WHO IS THE LENDER ON

25   THIS LOAN.

1          MR. CHARLES:  BECAUSE I DON'T WANT TO TAKE THEIR WORD

2    FOR IT.  I WANT TO ACTUALLY SEE SOME DOCUMENTS.  IN THE PAST

3    THEY SAID THE PERSON WHO OWNS THIS LOAN IS SASCO TRUST, AND MY

4    CLIENT SAID WELL SHOW ME SOMETHING THAT SAYS THIS, AND THERE'S

5    BEEN NOTHING, NOTHING, NOTHING, NOTHING.

6          THE COURT:  SO THE SASCO -- IT SOUNDS LIKE YOU'RE

7    SAYING THE SASCO TRUST IS IN EFFECT THE LENDER, THE NEW LENDER

8    LET'S SAY?

9          MR. CHARLES:  IT'S SUPPOSED TO BE AS FAR AS MY CLIENT

10   HAS BEEN ABLE TO DETERMINE.

11          THE COURT:  NOW, WHERE DID YOU GET THE INFORMATION

12   THAT IT WAS THE SASCO TRUST?

13          MR. CHARLES:  I BELIEVE THAT HAS BEEN PROVIDED BY

14   EITHER BANK OF AMERICA FIRST AS SERVICER, AND THEN -- WHO WAS

15   NOT THE ORIGINAL SERVICER, AND SPS WHO CLAIMS TO BE THE

16   SUCCESSOR SERVICER TO BANK OF AMERICA, AND THE --

17          THE COURT:  BUT I THOUGHT SAID SASCO -- OKAY.  YOU

18   SAID SASCO TRUST IS SERVICING THE LOAN -- EXCUSE ME, YOUR

19   CLIENT SPS IS SERVICING MR. BIVENS' LOAN FOR SASCO TRUST,

20   RIGHT?

21          MR. CHARLES:  THAT'S WHAT THEY SAY.

22          THE COURT:  OKAY.

23          MR. CHARLES:  AND SO THE QUESTION IS SHOW ME

24   SOMETHING SINCE I'VE NEVER HEARD OF THIS SASCO TRUST,

25   STRUCTURED ASSETS SECURITIES CORPORATION, AND SO THE -- IN FACT

```
1   MY CLIENT RECENTLY SENT OUT ANOTHER QUALIFIED WRITTEN REQUEST
2   THAT SAID PLEASE SHOW ME THE CHAIN OF TRANSFER, HOW DID IT GET
3   FROM MORTGAGE LENDERS NETWORK TO SASCO.
4           FROM MY CLIENT'S INVESTIGATION, APPARENTLY IT WENT
5   YOU LEHMAN BROTHERS, WHICH, OF COURSE, IS HARD TO GET AHOLD OF
6   BECAUSE THEY'RE SIMILAR -- IT'S FUNNY, YOUR HONOR, YOU KNOW, ON
7   THE ONE HAND PEOPLE LIKE ME ARE IN A SITUATION WHERE OH, MY
8   CLIENT IS A DEADBEAT, HE'S NOT PAYING HIS BILLS.  HE'S NOT THE
9   ONLY ONE.  THERE'S MAJOR --
10          THE COURT:  HOW LONG HAS THE LOAN BEEN DEFAULT?
11          MR. CHARLES:  HIS LOAN HAS BEEN IN DEFAULT SINCE HE
12  RAN INTO FINANCIAL TROUBLE BACK IN 09, I BELIEVE, AND HE'S
13  ABLE -- HE'S ABLE TO RESOLVE THIS ON A REASONABLE BASIS NOW,
14  BUT THERE ARE TWO THINGS.
15          ONE, WE CAN'T GET ANY RESOLUTION ON A REASONABLE
16  BASIS WHICH IS TO SAY WHAT IT'S WORTH NOW OR SOMETHING CLOSE TO
17  WHAT IT'S WORTH NOW, AND WE HAVEN'T BEEN ABLE TO NAIL DOWN TO
18  WHOM HE SHOULD BE NEGOTIATING WITH.
19          HE SENT OUT ANOTHER QUALIFIED WRITTEN REQUEST, AND
20  THE RESPONSE FROM LOCKE LORD --
21          THE COURT:  WELL, NOW, THIS IS NOT INVOLVED IN OUR
22  DISPUTE TODAY, RIGHT?
23          MR. CHARLES:  YES AND NO.
24          THE COURT:  WELL, WE'RE HERE FOR YOUR TWO MOTIONS TO
25  COMPEL.
```

1          MR. CHARLES:  RIGHT, BUT IT'S AN ANSWER TO YOUR

2   QUESTION OF WHO IS THE SERVICER, AND OBVIOUSLY THE SERVICER

3   WOULD HAVE TO BE WORKING FOR WHOMEVER OWNS THE LOAN, AND THE

4   QUESTION WAS PLEASE SEND ME INFORMATION SHOWING THE COMPLETE

5   CHAIN OF TRANSFER OF THE LOAN PROMISSORY NOTE.  PLEASE IDENTIFY

6   EACH HOLDER OF THE NOTE AND DATE OF TRANSFER.  THE ANSWER WAS

7   NEED MORE TIME.

8          WAIT A SECOND, BUT FOR HOW MANY YEARS HAS MY CLIENT

9   BEEN ASKING FOR THIS, AND THE INFORMATION IS NOT READILY

10  AVAILABLE.  I TELL MY CLIENT OVER AND OVER AGAIN SOONER OR

11  LATER THEY'RE ARE GOING TO DO ALL THE PAPERWORK.  THEY'RE GOING

12  TO FIND ALL THE INFORMATION.  THEY'RE GOING TO SHOW YOU OWN THE

13  LOAN, AND THEN YOU'RE GOING TO HAVE TO PAY.  HE SAYS FINE.

14         THE COURT:  NOW, WHAT YOU SAID YOUR CLIENT WOULD BE

15  ABLE TO SETTLE THE MATTER ON A REASONABLE BASIS, I'M CURIOUS TO

16  KNOW WHAT YOU THINK THAT REASONABLE BASIS WOULD BE.

17         MR. CHARLES:  THIS MATTER IS A SEPARATE MATTER FROM

18  THE HOUSE.  TO SETTLE THE OVERALL MATTER, GET AN APPRAISAL ON

19  TO HOUSE NOW --

20         THE COURT:  I'M ASKING YOU FOR DOLLARS.

21         MR. CHARLES:  NO, I'M SORRY, THE HOUSE HE BELIEVES IS

22  WORTH ABOUT 70,000.

23         THE COURT:  WHAT WAS THE ORIGINAL LOAN?

24         MR. CHARLES:  THE ORIGINAL LOAN WAS SOMEWHERE AROUND

25  130.

```
1                THE COURT:  AND THIS IS A RESIDENCE?

2                MR. CHARLES:  YES, MA'AM, AND IT'S DETERIORATED OVER

3    TIME.

4                THE COURT:  OKAY.  SO YOUR CLIENT WANTS TO SETTLE

5    WITH SPS FOR ABOUT 70,000?

6                MR. CHARLES:  HE'LL GO OVER THAT.  SO WHATEVER THE

7    APPRAISAL --

8                THE COURT:  ARE YOU REPRESENTING TO ME THAT HE CAN

9    PAY THAT?

10               MR. CHARLES:  YES, MA'AM, IT WOULD HAVE TO BE A NEW

11   LOAN.  SO IT WOULD HAVE TO BE MODIFIED --

12               THE COURT:  SO HE DOES NOT HAVE CASH TO DO IT?

13               MR. CHARLES:  THAT'S RIGHT.

14               THE COURT:  HE WANTS THEM TO GIVE -- HE WANTS TO GET

15   A NEW MORTGAGE IN THE AMOUNT OF 70,000 AS A SETTLEMENT; IS THAT

16   WHAT YOU'RE SAYING?

17               MR. CHARLES:  NO, MA'AM, HE'LL DO MORE THAN THAT.

18   HE'LL TAKE WHATEVER THE APPRAISED VALUE IS AND ADD 10,000

19   DOLLARS TO THAT.  SO A BETTER --

20               THE COURT:  TO GET A NEW MORTGAGE FOR THAT?

21               MR. CHARLES:  RIGHT, DO A NEW MORTGAGE WITH THAT

22   NUMBER WHICH HE CAN PAY NOW WHICH HE COULDN'T THEN.

23               THE COURT:  OKAY.  LET'S GET BACK TO YOUR MOTIONS TO

24   COMPEL.

25               MR. CHARLES:  OKAY.  SO, AGAIN, THE AMOUNT OF MONEY
```

1   INVOLVED, THE THING ABOUT RESPA IS THE AMOUNT OF MONEY INVOLVED

2   FOR MY CLIENT IS VERY SMALL.  THE ISSUE, THOUGH, IS VERY BIG,

3   AND THE ISSUE IS DO SERVICERS HAVE TO ANSWER THE QUESTIONS, OR

4   CAN THEY JUST PASS ON IT, AND THAT'S ONE OF THE REASONS --

5           THE COURT:  WELL, I WON'T BE RULING ON YOUR MOTION IN

6   THAT MANNER.  I'M GOING TO LOOK AT EACH ONE OF THE REQUESTS AND

7   MAKE A RULING IN LIGHT OF THE DEFENDANT'S OBJECTIONS.

8           MR. CHARLES:  I UNDERSTAND, BUT ONE OF THE

9   DEFENDANT'S BIGGEST OBJECTIONS IS LOOK, THIS IS A TRIVIAL CASE,

10  SO WE SHOULDN'T --

11          THE COURT:  NO, THAT'S NOT ONE OF THEIR BIGGEST

12  OBJECTIONS.  I'VE LOOKED AT THEIR OBJECTIONS.  THEY MADE MORE

13  SPECIFIC OBJECTIONS THAN THAT.

14          MR. CHARLES:  BUT CONSTANTLY THEY SAY THE AMOUNT OF

15  MONEY AT ISSUE IS ONLY THIS.

16          THE COURT:  I HADN'T SEEN THAT.

17          MR. CHARLES:  IN THEIR RESPONSE TO THE MOTION TO

18  COMPEL --

19          THE COURT:  NO, NO, THEY FILED WRITTEN RESPONSES TO

20  YOUR REQUESTS.

21          MR. CHARLES:  YES, MA'AM.

22          THE COURT:  AND THEY SET OUT WHAT THEIR OBJECTIONS

23  ARE, AND THAT IS GOING TO BE THE BASIS FOR MY RULING, WHETHER

24  THEY'RE RIGHT OR WRONG ON THEIR OBJECTIONS.

25          MR. CHARLES:  OKAY.  AND THE OBJECTION I WAS TALKING

1  ABOUT WAS THEIR FURTHER OBJECTIONS IN THEIR RESPONSE TO MY

2  MOTION TO COMPEL.

3        THE COURT:  THOSE AREN'T OBJECTIONS.  THOSE ARE THEIR

4  ARGUMENTS.

5        MR. CHARLES:  OKAY.  I'M SORRY, THAT'S THE ARGUMENT I

6  WAS TALKING ABOUT, BUT, YES, YOUR HONOR, I WOULD BE HAPPY TO GO

7  THROUGH THE BASIS FOR EACH ONE.  THE BIGGEST BASIS FOR EACH ONE

8  IS THE QUESTION OF STATUTORY DAMAGES, WHAT DOES IT TAKE TO

9  PROVE STATUTORY DAMAGES, AND WHAT DISCOVERY IS ALLOWABLE FOR

10  STATUTORY DAMAGES.  THIS IS THE FIRST INTERROGATORY.  THE

11  SECOND -- I'M SORRY, THE FIRST SET OF PRODUCTION.

12        THE COURT:  LET ME TAKE A LOOK AT IT.  I HAVE A COPY

13  OF THE PLAINTIFF'S FIRST REQUEST FOR PRODUCTION IN FRONT OF ME

14  INCLUDING SPS' RESPONSE STARTING WITH REQUEST NUMBER 1.

15        MR. CHARLES:  THIS IS SORT OF A GENERAL REQUEST WHERE

16  I'M JUST SAYING LOOK, WHAT IS -- LET'S START WITH THE BASELINE,

17  WHAT DOCUMENTS DO YOU HAVE OF HIS.  SOME OF THOSE I GOT.  SOME

18  OF THOSE I DIDN'T GET.  I DON'T KNOW WHICH ONES ARE WHICH.

19        THE COURT:  THIS IS A CASE WHERE SPS MADE CERTAIN

20  OBJECTIONS AND SAID WITHOUT WAIVING THE OBJECTIONS THEY AGREED

21  TO PRODUCE CORRESPONDENCE, AND THAT'S WHAT YOU GOT, OR WHAT

22  THEY SAY THEY GAVE YOU?

23        MR. CHARLES:  YES, YOUR HONOR, AND WHAT I'D LIKE IS

24  IF THAT'S ALL THE DOCUMENTS THEY HAVE, THEN THAT'S FINE, THAT'S

25  ALL THE DOCUMENTS THEY HAVE, BUT WHAT I WOULD LIKE IS ALL THE

1  DOCUMENTS RESPONSIVE TO THAT REQUEST, NOT TO THEIR REDEFINITION

2  OF IT.

3          THE COURT:  LET ME HEAR FROM THE DEFENSE SIDE.

4          MS. CAMPBELL:  CERTAINLY, YOUR HONOR.  THANK YOU.  I

5  THINK IT'S IMPORTANT TO REFOCUS OUR DISCUSSION IN THIS CASE

6  ABOUT WHAT THE CLAIM AND DEFENSES ARE BECAUSE THAT'S WHAT IS

7  THE FRAMEWORK OF WHAT'S RELEVANT IN DISCOVERY, AND IN THIS CASE

8  WE HAVE A SINGLE ALLEGED RESPA CLAIM THAT INVOLVES ONE PIECE OF

9  CORRESPONDENCE FROM DECEMBER OF 2012.  THAT ALLEGED QWR LETTER

10  WAS SENT 12 DAYS AFTER SPS BEGAN SERVICING THE LOAN, AND MR.

11  BIVENS HAS NOT MADE A PAYMENT SINCE --

12          THE COURT:  WE GOT THAT, BUT WE'RE FOCUSING NOW ON

13  THIS REQUEST NUMBER 1 AND YOUR OBJECTIONS, AND HE'S SAYING YOUR

14  OBJECTION ARE NO GOOD.

15          MS. CAMPBELL:  I UNDERSTAND.

16          THE COURT:  IS HE WRONG?

17          MS. CAMPBELL:  HE IS WRONG.  FIRST OF ALL, WE HAVE

18  PRODUCED MULTIPLE TIMES INFORMATION CONCERNING THE CHAIN OF

19  TITLE TO MR. BIVENS' LOAN.  WE'VE PRODUCED THE DEED.  WE'VE

20  PRODUCED THE ASSIGNMENTS.  WE'VE EVEN LITIGATED THAT IN TWO

21  PRIOR CASES.  WE HAVE GIVEN --

22          THE COURT:  I DON'T REMEMBER ANY MENTION BEING MADE

23  OF PRIOR CASES INVOLVING MR. BIVENS; HAVE THERE BEEN?

24          MS. CAMPBELL:  THIS IS OUR THIRD ITERATION OF THE

25  CASE --

1            THE COURT:  NOW, WHERE HAVE THOSE OTHER CASES BEEN?

2            MS. CAMPBELL:  ONE WAS GWINNETT COUNTY SUPERIOR

3    COURT.  IT WAS A QUIET TITLE ACTION INITIALLY FILED IN 2013.  A

4    SECOND ONE -- THAT ONE MAY HAVE BEEN AMENDED, AND THEN

5    SUBSEQUENTLY REMOVED TO FEDERAL COURT.

6            THE COURT:  WHO'S GOT THAT CASE?

7            MS. CAMPBELL:  IT'S BEEN DISMISSED, AND THIS IS NOW,

8    THE CASE THAT IS PENDING BEFORE YOU NOW IS THE THIRD.

9            THE COURT:  WHAT WAS THE SECOND CASE?

10           MS. CAMPBELL:  IT WAS ABOUT CHAIN OF TITLE, OWNERSHIP

11   ISSUES, QUIET TITLE.

12           THE COURT:  FEDERAL, STATE?

13           MS. CAMPBELL:  FEDERAL.  THE TITLE ISSUES WERE STATE.

14           MS. DISHUN:  I THINK IT WAS BEFORE YOU JUDGE EVANS,

15   AND THAT YOU DISMISSED IT.

16           THE COURT:  ON WHAT BASIS?

17           MS. DISHUN:  I THINK IT WAS FAILURE TO PLEAD A CLAIM,

18   AND THAT YOU ALLOWED THE SINGLE QWR ISSUE TO BE REPLED.

19           THE COURT:  ALL RIGHT.  I GOT YOU KNOW.

20           MR. CHARLES:  AND, YOUR HONOR, THAT'S WHERE I CAME

21   IN.  BEFORE THAT --

22           MS. CAMPBELL:  THERE WAS PRIOR COUNSEL INVOLVED.

23           THE COURT:  OKAY.  I THINK I UNDERSTAND.

24           MS. CAMPBELL:  SO WE HAVE PRODUCED, WE HAVE PRODUCED

25   TO MR. CHARLES AND MR. BIVENS AND MR. BIVENS' PRIOR COUNSEL

1  INFORMATION ABOUT HIS LOAN, SPS' ACCOUNT RECORDS AND PAYMENT

2  HISTORY WHICH DEMONSTRATE THAT THERE HAVE BEEN NO PAYMENTS

3  WHICH RAISES THE QUESTION AS TO WHETHER OR NOT THIS EVEN FALLS

4  UNDER THE DEFINITION OF SERVICING OF RESPA BECAUSE THERE HAVE

5  BEEN NO PAYMENTS --

6          THE COURT:  I DON'T THINK YOU'RE RIGHT ABOUT THAT.

7  THAT'S NOT GOING TO WORK.

8          MS. CAMPBELL:  I UNDERSTAND.  THE DEFINITION OF RESPA

9  NOW IS DIFFERENT THAN -- WELL, THE DEFINITION I THINK OF

10 SERVICING NOW HAS CHANGED AND BROADENED SOME SINCE THE RESPA

11 STATUTE WENT INTO EFFECT IN 2012 WHEN THE QWR LETTER THAT WAS

12 SENT THAT WE'RE DISCUSSING FOR THIS CASE, BUT YOU HAVE TO HAVE

13 A QWR IN ORDER TO HAVE A CLAIM THAT QUALIFIES UNDER RESPA, AND

14 WE CONTEST THAT THIS ISSUE -- THERE'S BEEN NO FINDING THAT THE

15 LETTER THAT WAS SENT WAS A PROPER QWR, OR THAT IT WAS SENT TO

16 THE DESIGNATED ADDRESS.

17         THE COURT:  OKAY.  IN MY EARLIER RULING WHERE I

18 REJECTED -- I GUESS I DISMISSED TWO OF THE DEFENDANTS, AND I

19 SAID THAT MR. BIVENS' CLAIM AS TO SPS COULD PROCEED ON ONE OF

20 THE LOANS.  JUST REMIND ME DID I MAKE A FINDING, DID I SAY

21 ANYTHING ABOUT WHETHER IT WAS A QWR OR NOT?

22         MS. CAMPBELL:  YOU DID NOT, AND I WILL CONFIRM.  I

23 HAVE THE ORDER RIGHT HERE.

24         THE COURT:  I'VE GOT MY COPY, TOO.

25         MS. CAMPBELL:  I THINK THE ISSUES THAT THE COURT HAS

1  ALLOWED TO PROCEED IS WHETHER THE RESPONSES BY SPS TO THE

2  LETTER AT ISSUE WERE ADEQUATE, AND I THINK THERE WAS ALSO AN

3  ISSUE OF WE DIDN'T HAVE DOCUMENTS AND INFORMATION -- IT WAS ON

4  A MOTION TO DISMISS, SO WE WERE LIMITED TO THE FOUR CORNERS OF

5  THE COMPLAINT --

6           THE COURT:  AS OPPOSED TO THE SUBSTANCE OF WHAT WAS

7  IN THE LETTER?

8           MS. CAMPBELL:  YES, YOUR HONOR, THAT'S MY

9  RECOLLECTION.

10           THE COURT:  WHY -- WELL NEVER MIND.  OKAY.  LET'S GO

11  AHEAD.

12           MS. CAMPBELL:  SO GETTING BACK TO REQUEST NUMBER 1

13  WHICH IS WHAT YOU HAD ASKED ME TO FOCUS ON, WE HAVE PRODUCED

14  ACCOUNT RECORDS, CORRESPONDENCE, CORRESPONDENCE THAT SPS HAS

15  HAD WITH THE CONSUMER FINANCE BUREAU, WITH THE GEORGIA ATTORNEY

16  GENERAL'S OFFICE, WITH THE GEORGIA LEGISLATURE, OUR

17  CORRESPONDENCE FILE.  WE HAVE PRODUCED ASSIGNMENT DOCUMENTS.

18  WE PRODUCED OUR RESPONSES TO THE QWR LETTERS AND COMMUNICATIONS

19  WITH PRIOR COUNSEL.  WE CONSIDER THAT WE HAVE FULLY RESPONDED

20  TO THE REQUEST.

21           THE COURT:  BUT THAT'S NOT ONE OF THE OBJECTIONS THAT

22  WE'RE DEALING WITH, I DON'T THINK.

23           MS. CAMPBELL:  WELL, WE HAVE SAID THAT IT'S OVERLY

24  BROAD, UNDULY BURDENSOME, NOT PROPERLY LIMITED IN TIME OR SCOPE

25  AND THAT IT COMMANDS PRODUCTION OF DOCUMENTS THAT ARE NOT

1    RELEVANT.  DESPITE THOSE OBJECTIONS, WE'VE PRODUCED

2    EVERYTHING.  SO IF MR. CHARLES IS SAYING HE DOESN'T HAVE --

3              THE COURT:  YOU'RE SAYING THERE'S NO HARM BECAUSE YOU

4    PRODUCED EVERYTHING?

5              MS. CAMPBELL:  YEAH, AND IF WE HAVEN'T PRODUCED

6    SOMETHING IN PARTICULAR, WE'D LIKE TO KNOW WHAT IT IS BECAUSE

7    WE DON'T KNOW WHAT ELSE HE'S LOOKING FOR.

8              THE COURT:  WELL, WE'D BE CAUGHT IN A ROUND ROBIN IF

9    WE GO THAT WAY.

10             MS. CAMPBELL:  HE'S ESSENTIALLY ASKING US TO PROVE A

11   DOUBLE NEGATIVE WITH REGARD TO WHO IS THE OWNER OF THE NOTE,

12   AND QUITE FRANKLY WHOEVER THE OWNER IS IS NOT THE CLAIM AT

13   ISSUE BEFORE THE COURT.

14             TO THE EXTENT HE'S TRYING TO SUGGEST THAT SPS MAY NOT

15   BE THE SERVICER, I THINK THAT ISSUE HAS ALREADY BEEN

16   DETERMINED.  HE'S ALLEGED IT IN HIS PLEADINGS.  WE'VE ADMITTED

17   IT IN OUR ANSWER, AND I THINK THE COURT HAS ASSUMED THAT IS THE

18   CASE IN MAKING ITS PRIOR ORDER.  IF, IN FACT, MR. BIVENS

19   DOESN'T BELIEVE THAT SPS IS THE SERVICER, THEN I DON'T KNOW WHY

20   WE'RE SITTING HERE.

21             THE COURT:  BUT THE PROBLEM I'M HAVING IS THAT WHEN

22   YOU RESPONDED TO THIS REQUEST NUMBER 1, YOU DIDN'T SAY ANYTHING

23   ABOUT WE'VE ALREADY DONE ALL THIS, AND IT WOULD BE HARASSMENT

24   TO DO IT AGAIN.

25             YOU MADE CERTAIN OBJECTIONS OVERLY BROAD, UNDULY

1   BURDENSOME, NOT PROPERLY LIMITED, COMMANDING THE PRODUCTION OF

2   DOCUMENTS THAT ARE IRRELEVANT.  YOU WENT ON TO OBJECT THAT SOME

3   OF THE DOCUMENTS WERE COVERED BY ATTORNEY/CLIENT PRIVILEGE OR

4   WORK PRODUCT, AND THEN YOU SAID WELL, YOU KNOW, WE'LL AGREE TO

5   PRODUCE STUFF THAT'S NOT ATTORNEY/CLIENT OR WORK PRODUCT.  I

6   MEAN THAT PRETTY FAIRLY COVERS WHAT'S IN YOUR RESPONSE.

7           MS. CAMPBELL:  YES, YOUR HONOR, I AGREE.  I THINK WE

8   HAD PRODUCED CERTAIN THINGS AT THE TIME THAT WE HAD INITIALLY

9   RESPONDED.  I THINK WE DID MAKE SUPPLEMENTAL PRODUCTIONS TO MR.

10  CHARLES TO GIVE HIM ADDITIONAL DOCUMENTS TO TRY AND RESOLVE ANY

11  DISPUTES OVER THIS ISSUE.

12          WE HAVE NOT PRODUCED -- THE REQUEST ITSELF IS BROAD.

13  HE WANTS ALL DOCUMENTS RELATED TO ANY HOME LOAN BELIEVED TO BE

14  SERVICED BY SPS OWNED BY MR. BIVENS.  I MEAN THAT INCLUDES OUR

15  FIRM'S CORRESPONDENCE WITH SPS' LEGAL DEPARTMENT WHICH

16  OBVIOUSLY WE'RE GOING TO CLAIM IS PRIVILEGE AND NOT SUBJECT TO

17  DISCLOSURE.  SO WE HAVE NOT PRODUCED THAT INFORMATION, BUT WE

18  HAVE PRODUCED ALL THE -- EVERYTHING THAT WE SAID WE WOULD

19  PRODUCE, AND SOMETIMES WE PRODUCED IT MULTIPLE TIMES.

20          THE COURT:  OKAY.  YOU GET THE LAST WORD.

21          MR. CHARLES:  THE PROBLEM I HAVE HERE IS VERY

22  SIMPLE.  I KEEP HEARING WE'VE PRODUCED IT -- I'M SORRY, I'M

23  SUPPOSED TO KEEP THIS VERY TAME.  MY CLIENT THROUGH SEVERAL

24  CONGRESSMEN THROUGH THE CONSUMER FINANCE BUREAU ASKED OTHER

25  REQUESTS THAT APPARENTLY WERE NOT QUALIFIED WRITTEN REQUESTS,

1   AND THEY SAID OKAY, HERE'S THE INFORMATION WE SENT HIM ALREADY,

2   AND ONE OF THE KEY PIECES OF INFORMATION IN THERE WAS A PAYMENT

3   HISTORY, AND IT WAS PAGE 1 OF 6, AND OVER AND OVER AND OVER

4   AGAIN THEY SENT HIM PAGE 1 OF 6 WITH FIVE PAGES MISSING.

5           THE COURT:  I'M HAVING THE SAME PROBLEM WITH YOUR

6   ARGUMENT AS I'M HAVING WITH THE DEFENSE'S ARGUMENT.  I CAN'T

7   TELL FROM WHAT I HAVE BEFORE ME WHETHER WHAT YOU'RE SAYING IS

8   CORRECT OR NOT.

9           MR. CHARLES:  AND I PRODUCED, I PRODUCED IN THE

10  SECOND, I BELIEVE THE SECOND MOTION TO COMPEL I PRODUCED, OR

11  WAS IT ATTACHED TO THIS ONE?  THEIR CLAIM WAS WE PRODUCED OVER

12  700 PAGES.  OF THAT -- AND IT TURNED OUT IT'S NOT ACTUALLY

13  THAT.  IT WAS 671 PAGES.  OF THAT 671 PAGES, THERE WERE FIVE

14  COPIES OF THE SAME LETTER PRODUCED OVER AND OVER AGAIN THAT WAS

15  THREE OR FOUR PAGE LONG.  THERE WERE FOUR COPIES OF A NOTICE TO

16  REMOVE THAT WAS 11 PAGES LONG.

17          THIS CASE THAT HAD ORIGINALLY BEEN MOVED -- THIS

18  CASE -- ONE OF THE EARLIER CASES THAT HAD ORIGINALLY BEEN MOVED

19  FROM STATE COURT TO FEDERAL COURT, THE NOTICE OF REMOVAL AND

20  THE WHOLE THING WAS 185 PAGES LONG COPIED OFF PACER.  THAT WAS

21  PRODUCED WITH TWO ENTIRE COPIES.  I THINK I WAS LOOKING THROUGH

22  429 PAGES OF THE 671 PAGES PRODUCED WHERE WERE THOSE THREE

23  DOCUMENTS --

24          THE COURT:  OKAY.  WE NEED TO GET BACK TO WHAT'S AT

25  ISSUE HERE, THOUGH, AND THAT IS THESE SPECIFIC REQUESTS FOR

1  PRODUCTION, AND I'M READY TO RULE ON NUMBER 1.

2      MR. CHARLES:  OKAY.

3      THE COURT:  WITH RESPECT TO NUMBER 1, I'M DENYING

4  PLAINTIFF'S REQUEST TO -- MOTION TO COMPEL AND FURTHER

5  RESPONSE, AND HERE'S MY REASONING.  STARTING FIRST WITH THE

6  ATTORNEY/CLIENT STUFF, IT IS MY PRACTICE ALWAYS TO NOT ALLOW AN

7  OBJECTION WHICH BASICALLY SAYS IF WE PRODUCE EVERYTHING THAT

8  YOU ALL -- THAT'S IN THE CATEGORY YOU'RE ASKING FOR, IT'S GOING

9  TO INCLUDE SOME ATTORNEY/CLIENT PRIVILEGED STUFF, AND,

10 THEREFORE, WE'RE NOT RESPONDING TO THIS REQUEST.  I DON'T THINK

11 THAT'S A PROPER OBJECTION.

12      I DO KNOW THAT THERE ARE NUMEROUS FIRMS IN ATLANTA

13 THAT USE THAT PROCEDURE SPECIFICALLY, AND IT MAY BE THAT THERE

14 ARE JUDGES THAT ARE NOT BOTHERED BY IT, BUT IT DOES BOTHER ME.

15 EVEN THOUGH SPS IS SAYING WELL WE'LL GIVE YOU EVERYTHING THAT'S

16 NOT PROTECTED, I THINK THE PROPER PROCEDURE IS FOR SPS TO

17 RESPOND TO THE REQUESTS TO THE EXTENT THAT IT HAS DOCUMENTS,

18 AND THEN TO SAY WE DO HAVE SOME STUFF THAT'S PROTECTED BY

19 ATTORNEY/CLIENT PRIVILEGE OR WORK PRODUCT, AND THEN FILE A LIST

20 OF WHAT IS NOT BEING PRODUCED ON GROUNDS THAT IT'S PROTECTED

21 WITH ENOUGH SUFFICIENCY SO THAT THE PLAINTIFF CAN CHALLENGE IT

22 IF HE WISHES TO DO SO.

23      HAVING SAID THAT, THOUGH, I DO THINK REQUEST NUMBER 1

24 IS OVERLY BROAD AND UNDULY BURDENSOME.  I THINK IN SOME PART

25 THIS IS A FUNCTION OF THE USE OF THE PHRASE "RELATED TO."  THAT

1    IS TERRIBLY VAGUE, AND I THINK IT CAN'T BE FAIRLY DETERMINED

2    WHAT IS REALLY RELATED TO AND WHAT IS NOT.

3          SO I AM SUSTAINING THE OBJECTION ON THE BASIS THAT

4    THE REQUEST IS OVERLY BROAD AND UNDULY BURDENSOME, AND ACTUALLY

5    I THINK NOT PROPERLY LIMITED AS TO TIME OR SCOPE, AS WELL.  THE

6    ONLY WAY SPS COULD RESPOND TO THIS REQUEST WOULD BE TO ERR ON

7    THE, IN MY OPINION, EXCESSIVE SIDE TO RESPOND BY SENDING

8    ANYTHING IN THE WORLD THAT ANYBODY COULD DEEM RELATED TO A

9    PARTICULAR HOME LOAN.

10          ALL RIGHT.  NOW, I THINK THAT REALLY DETERMINES THE

11    RULINGS ON THE REST OF THE ITEMS IN PLAINTIFF'S REQUEST FOR

12    PRODUCTION, THE FIRST REQUEST FOR PRODUCTION.  AGAIN IN REQUEST

13    NUMBER 2 THE TERM "RELATED TO," COPIES OF ALL DOCUMENTS RELATED

14    TO POLICIES AND PROCEDURES YOU HAVE CORRESPONDING TO QWR'S.  IF

15    THIS REQUEST ASKS FOR DOCUMENTS REFLECTING POLICIES AND

16    PROCEDURES, I WOULD NOT OVERRULE THE OBJECTION, BUT AS THINGS

17    STAND --

18          MR. CHARLES:  YOUR HONOR, CAN WE NARROW IT TO THAT?

19          THE COURT:  NO, I'M NOT GOING TO DEAL WITH YOU ON

20    THAT.  YOU'RE GOING TO HAVE TO WORK THIS OUT ON YOUR OWN.

21    OKAY.  THEN ON REQUEST NUMBER 2, SAME RULING DOCUMENTS RELATED

22    TO POLICIES AND PROCEDURES, I'M SUSTAINING THE DEFENDANT'S

23    OBJECTION ON GROUNDS OF OVERBREADTH, UNDULY BURDENSOME, NOT

24    PROPERLY LIMITED AS TO TIME.

25          WITH RESPECT TO NUMBER 3, IT'S THE SAME THING, ALL

1    DOCUMENTS RELATED TO VIOLATIONS OR ALLEGATIONS OF VIOLATIONS OF

2    THE POLICIES AND PROCEDURES YOU HAVE FOR RESPONDING TO QWR'S.

3    IF YOU DEFINE THE WORDS "RELATED TO" BROADLY, WHICH I THINK

4    PERHAPS PLAINTIFF IS DOING, THIS REQUEST HAS NO BOUNDS.  IT'S

5    REALLY MEANINGLESS AS TO SCOPE AND WOULD JUST RESULT IN A

6    FISHING EXPEDITION.

7            WITH RESPECT TO NUMBER 4, SAME RULING, PRODUCE COPIES

8    OF ALL DOCUMENTS RELATED TO STATE OR FEDERAL GOVERNMENT

9    INVESTIGATIONS OR INQUIRIES, I THINK THAT REQUEST IS MUCH TOO

10   BROAD, AND I THINK ANSWERING IT WOULD BE UNDULY BURDENSOME TO

11   SPS.

12           MR. CHARLES:  BUT AGAIN, YOUR HONOR, REFLECTING WOULD

13   BE DIFFERENT?

14           THE COURT:  I'M NOT GOING TO DO THIS THIS WAY.  IT'S

15   YOUR OBLIGATION AS PLAINTIFF'S COUNSEL TO PHRASE THINGS IN A

16   WAY THAT'S CORRECT.

17           ALL RIGHT.  PRODUCE ALL -- NUMBER 5, PRODUCE COPIES

18   OF ALL DOCUMENTS RELATED TO QWR'S REQUESTING THE IDENTITY OF

19   THE OWNER OF THE NOTE, ET CETERA, ET CETERA, WHERE THE QWR WAS

20   RECEIVED AFTER JANUARY 1, 2001 AND BEFORE JUNE 30TH, 2014,

21   WELL, AGAIN, WE GET TO THE ISSUE OF WHAT DOES "RELATED TO"

22   MEAN, BUT ALSO I WOULD NOTE WHAT IS IMPLICIT IN THIS REQUEST IS

23   THAT THE DEFENDANT DETERMINED WHICH OF THE UNDOUBTEDLY MASSIVE

24   REQUESTS THEY HAVE RECEIVED ARE TRULY QWR'S AND NOT

25   IMPERMISSIBLE REQUESTS.

1        I THINK IT WOULD BE TERRIBLY BURDENSOME FOR SPS TO

2   HAVE TO POUR THROUGH WHAT THEY GOT AND SEE WHICH OF THESE ARE

3   TRUE QWR'S, BUT, AGAIN, THE KEY COMPONENT HERE IS THE

4   IMPERMISSIBLE USE OF THE WORDS "RELATED TO."

5        SAME RULING ON NUMBER 6 RELATED TO QWR'S, I THINK

6   THAT'S OVERLY BROAD, UNDULY BURDENSOME.  SO IT'S OUT.

7        REQUEST NUMBER 7, PRODUCE COPIES OF ALL DOCUMENTS

8   RELATED TO QWR'S THAT YOU DID NOT RESPOND TO.  AGAIN, THE SAME

9   PROBLEM WITH OVERBREADTH, AND I ALSO THINK -- WELL, THAT'S MY

10  RULING ON THAT.

11       NUMBER 9, PRODUCE COPIES OF ALL DOCUMENTS YOU RELIED

12  ON IN ANSWERING PLAINTIFF'S FIRST INTERROGATORIES SERVED UPON

13  YOU SIMULTANEOUSLY HEREWITH.  SPS' FIRST OBJECTION HERE IS THAT

14  THE ATTORNEY/CLIENT PRIVILEGE PROTECTS IT HERE.  I'M NOT SO

15  SURE I AGREE WITH SPS' OBJECTION.

16       WOULD YOU ALL LIKE TO BE HEARD ON THAT?

17       MS. CAMPBELL:  YES, YOUR HONOR, PERHAPS I CAN EXPLAIN

18  A LITTLE BIT FURTHER WHAT WE WERE SEEKING TO PROTECT IN

19  RESPONDING THAT WAY.  IF YOU LOOK AT THE INTERROGATORIES THAT

20  MR. BIVENS HAS PROPOUNDED, HE'S ASKED A NUMBER OF THINGS ABOUT

21  QWR'S THAT SPS HAS RECEIVED, AND THOSE IN PARTICULAR -- AND

22  ACTIONS RELATED TO QWR'S.

23       IN ORDER TO BE ABLE TO KNOW WHETHER SPS EVEN HAD

24  INFORMATION THAT WAS RELEVANT OR RATHER THAN JUST ISSUING

25  BLANKET OBJECTIONS, WE NEEDED TO GO AND TALK WITH DIFFERENT

1   PEOPLE AT SPS TO FIGURE OUT, FOR EXAMPLE, INTERROGATORY NUMBER

2   1 DO THEY EVEN KEEP RECORDS OF QWR'S --

3            THE COURT:  WHAT IS INTERROGATORY NUMBER 1?

4            MS. CAMPBELL:  IT IS RIGHT BELOW AT THE BOTTOM OF THE

5   PAGE, IT STATES THE NUMBER OF QWR'S YOU RECEIVED FROM JANUARY

6   1, 2011 UNTIL THE STATUTORY TIME LIMIT --

7            THE COURT:  I'VE GOT IT HERE NOW.  OKAY.

8            MS. CAMPBELL:  AND SO IN ORDER TO BE ABLE TO RESPOND

9   TO THE INTERROGATORIES, WE NEEDED TO KNOW INFORMATION FROM SPS

10  WHETHER THAT'S EVEN SOMETHING THEY COULD DETERMINE, AND THAT

11  INFORMATION REQUIRED US HAVING CONVERSATIONS AND COMMUNICATING

12  WITH VARIOUS PEOPLE IN SPS' LEGAL DEPARTMENT AND COMPLIANCE

13  DEPARTMENT AND OTHER COUNSEL, AND SO IT'S THOSE INTERNAL

14  DISCUSSIONS THAT WE HAD THAT WE WERE SEEKING TO PROTECT BECAUSE

15  WE NEEDED TO HAVE THOSE DISCUSSIONS IN ORDER TO RESPOND.

16           SO THERE ARE SOME LEGAL MEMORANDA, THERE ARE

17  COMPLIANCE AND LEGAL CONVERSATIONS, AND SOME OF THOSE ARE

18  MEMORIALIZED IN DOCUMENTS, AND WE WOULD TAKE THE POSITION THAT

19  THOSE DOCUMENTS WHICH WE MAY HAVE REVIEWED IN RESPONDING ARE

20  PROTECTED BY ATTORNEY/CLIENT PRIVILEGE, ATTORNEY WORK PRODUCT.

21           MR. CHARLES:  YOUR HONOR, THE FEDERAL RULES ARE

22  PRETTY CLEAR ON THAT SUBJECT WHEN YOU SAY ATTORNEY/CLIENT

23  PRIVILEGE, YOU HAVE TO PRODUCE A LOG.

24           THE COURT:  I THINK THAT REQUEST NUMBER 9 CAN BE

25  ANSWERED WITHOUT VIOLATING ATTORNEY/CLIENT PRIVILEGE.  THE

1  QUESTION IS WHAT DOCUMENTS DID YOU RELY ON, AND I THINK THAT'S

2  A PROPER QUESTION.  SO I WILL OVERRULE -- EXCUSE ME, I WILL

3  GRANT THE PLAINTIFF'S REQUEST TO PRODUCE OR TO COMPEL A

4  RESPONSE WITH RESPECT TO NUMBER 9.

5          MS. CAMPBELL:  AND I BELIEVE THE DOCUMENTS THAT WE

6  DID RELY ON, FOR EXAMPLE, IN RESPONDING TO INTERROGATORY NUMBER

7  3 WHICH REQUESTS THE NAMES, ADDRESSES, PLACES OF EMPLOYMENT,

8  TELEPHONE NUMBERS OF ALL PERSONS HAVING RELEVANT FACTS AND

9  KNOWLEDGE, WE WENT BACK THROUGH THE CORRESPONDENCE LOGS AND

10 PROVIDED THIS INFORMATION.  SO WE ARE HAPPY TO MAKE A

11 SUPPLEMENTAL RESPONSE AND MAKE SURE WE'VE COVERED EVERYTHING --

12         THE COURT:  BUT I'M GRANTING THIS MOTION.

13         MS. CAMPBELL:  UNDERSTOOD, YOUR HONOR.

14         THE COURT:  YOU DID NOTHING BUT OBJECT HERE ON

15 GROUNDS OF ATTORNEY/CLIENT PRIVILEGE, AND AS I SAID, I FEEL

16 CONFIDENT YOU CAN PRODUCE COPIES OF DOCUMENTS WITHOUT VIOLATING

17 ATTORNEY/CLIENT PRIVILEGE.

18         MR. CHARLES:  MAY I SAY ONE THING RELATED TO THIS IS

19 THAT THE DEFENDANTS HAVE USED THE TERM "RELATED TO" 11 TIMES IN

20 THEIR --

21         THE COURT:  I'M NOT INTERESTED.  I'M NOT INTERESTED

22 IN THAT.  WE'RE GOING TO GO THROUGH THESE ONE BY ONE, AND

23 WHATEVER I'VE GOT HERE IN THESE DISCOVERY REQUESTS AND WHATEVER

24 WE'VE GOT ON THE OBJECTIONS IS WHAT'S GOING TO BE THE BASIS OF

25 MY RULING.

1            MR. CHARLES:  OKAY.

2            THE COURT:  OKAY.  INTERROGATORY NUMBER 1, I GUESS

3    THE MOTION TO COMPEL INCLUDES INTERROGATORY NUMBER 1.  I GUESS

4    THE MOTION TO COMPEL INCLUDES -- OKAY.  TURNING TO

5    INTERROGATORY NUMBER 1, PLEASE STATE THE NUMBER OF QWR'S YOU

6    RECEIVED FROM JANUARY 1, 2001 UNTIL THE STATUTORY TIME LIMIT

7    FOR RESPONSES CHANGED.  SPS OBJECTS ON THE GROUNDS THAT IT IS

8    VAGUE, AMBIGUOUS AND CONFUSING.

9            WHAT DOES THAT MEAN UNTIL THE STATUTORY TIME LIMIT

10   FOR RESPONSES CHANGED?

11           MR. CHARLES:  YOUR HONOR, I USED THE WORDS FROM YOUR

12   ORDER ON THAT, BUT WHEN WE TALKED ABOUT THE MOTION TO COMPEL --

13   AT THE CONFERENCE FOR THE MOTION TO COMPEL, THEY READILY

14   IDENTIFIED THE DATE.  I BELIEVE IT WAS JANUARY 10TH, 2014.  SO

15   THERE'S NO ACTUAL CONFUSION THERE, AND IT WAS IN THEIR MOTION

16   TO DISMISS, AS WELL.

17           THE COURT:  WELL, WHAT DIFFERENCE DOES IT MAKE HOW

18   MANY QWR'S SPS GOT?

19           MR. CHARLES:  THE ISSUE WOULD BE IF -- WITHOUT ANY

20   OTHER DISCOVERY, IT MAKES VERY LITTLE DIFFERENCE.  WITH OTHER

21   DISCOVERY, IT BECOMES MORE IMPORTANT.  SO THE QUESTION IS IF

22   THEY RECEIVE A HUNDRED QWR'S AND THEY DON'T ANSWER TEN

23   PROPERLY, THAT'S RELATIVELY SIGNIFICANT.  IF THEY RECEIVE A

24   THOUSAND QWR'S AND THEY DON'T ANSWER TEN CORRECTLY, THAT'S A

25   ROUNDING ERROR.  THAT'S NOT REALLY SIGNIFICANT.

1          SO IN ORDER THE FIND OUT WHETHER OR NOT THERE'S A

2 SIGNIFICANT PATTERN AND PRACTICE, YOU SORT OF NEED TO KNOW THE

3 NUMBERS.

4          THE COURT:  BUT THAT ASSUMES THAT IT'S GOING TO BE

5 OBVIOUS WITHOUT A WHOLE LOT OF WORK WHICH ARE QWR'S AND WHICH

6 AREN'T.

7          MR. CHARLES:  WELL, YOUR HONOR, BEFORE I FILED THIS

8 MOTION, I THOUGHT QWR'S WERE DEFINED A LOT MORE BROADLY THEN

9 THEY'RE BEING DEFINED, BUT, YES, IT'S STILL INFORMATION THAT

10 YOU NEED TO KNOW AS TO WHAT IS A QWR AND WHAT ISN'T.  THE --

11          THE COURT:  BUT TO MAKE THAT DETERMINATION YOU'VE GOT

12 TO READ THE REQUEST AND THINK ABOUT WHETHER IT FITS THE

13 DEFINITION IN THE STATUTE, RIGHT?

14          MR. CHARLES:  WELL, THE DEFINITION IS EXTREMELY

15 BROAD.  THE DEFINITION IS DISPUTES OR REQUESTS FOR

16 INFORMATION.  SO --

17          THE COURT:  OKAY.  LET ME JUST LOOK HERE IN THE

18 STATUTE.  QUALIFIED WRITTEN REQUESTS, WRITTEN CORRESPONDENCE

19 OTHER THAN NOTICE ON A PAYMENT COUPON OR OTHER PAYMENT THING

20 MEDIUM THAT INCLUDES THE SERVICE TO IDENTIFY THE NAME AND

21 ACCOUNT OF THE BORROWER, MY GUESS IS A LOT OF THEM WOULD DO

22 THAT, AND INCLUDES A STATEMENT OF THE REASONS FOR THE BELIEF OF

23 THE BORROW TO THE EXTENT APPLICABLE THAT THE ACCOUNT IS IN

24 ERROR OR PROVIDES SUFFICIENT DETAIL TO THE SERVICER REGARDING

25 OTHER INFORMATION SOUGHT BY THE BORROWER.

1          NOW IS THIS SOMETHING -- HAS THAT BEEN AMENDED?

2          MR. CHARLES:  NOT THAT I KNOW OF, YOUR HONOR.

3          MS. CAMPBELL:  NO, YOUR HONOR, I DON'T BELIEVE THAT

4    PORTION HAS BEEN AMENDED.

5          THE COURT:  OKAY.  SO THEY WOULD HAVE TO READ EVERY

6    LETTER AND MAKE A DETERMINATION FOR THE PURPOSES OF ANSWERING

7    YOUR INTERROGATORY, YOU KNOW, WHETHER THE LETTER MEASURES UP.

8          MR. CHARLES:  BUT IT'S NOT THAT DIFFICULT OF -- IT

9    SHOULDN'T BE THAT DIFFICULT.  IT SHOULD BE A QUESTION OF IF

10   IT'S NOT A PAYMENT ON A BILL, AND IT HAS THE INFORMATION YOU

11   NEED, THE NAME OF THE BORROWER OR THE ACCOUNT NUMBER SO YOU CAN

12   IDENTIFY IT, THEN IT'S PRETTY MUCH A QUALIFIED WRITTEN

13   REQUEST.

14         THE COURT:  OKAY.  I WILL SUSTAIN THE OBJECTION OR

15   WILL NOT GRANT THE MOTION TO COMPEL INTERROGATORY NUMBER 1.  I

16   THINK IT'S VERY BURDENSOME.

17         INTERROGATORY NUMBER 2, PLEASE STATE THE NUMBER OF

18   QWR'S YOU RECEIVED FROM JANUARY 1ST, 2011 UNTIL JUNE 30TH,

19   2014, I THINK THIS SUFFERS FROM THE SAME PROBLEM.  I WILL NOT

20   COMPEL A FURTHER RESPONSE TO INTERROGATORY NUMBER 2.

21         NUMBER 3, STATE THE FULL NAMES, ADDRESSES, PLACES OF

22   EMPLOYMENT, TELEPHONE NUMBERS OF PERSONS HAVING RELEVANT

23   KNOWLEDGE OF THE FACTS AND ISSUES INVOLVED IN THIS ACTION.  FOR

24   EACH PERSON IDENTIFIED, DESCRIBE THE SUBJECT MATTER ABOUT WHICH

25   THIS PERSON HAS RELEVANT KNOWLEDGE AND BRIEFLY SUMMARIZE WHAT

1   YOU UNDERSTAND THAT KNOWLEDGE TO BE.

2          SPS OBJECTS ON THE GROUNDS THAT THERE'S

3   ATTORNEY/CLIENT PRIVILEGE OR WORK PRODUCT PRIVILEGE.  SUBJECT

4   TO AND WITHOUT WAIVING THAT OBJECTION, I'M READING FROM THE

5   RESPONSE, SPS STATES THE FOLLOWING PERSONS HAVE RELEVANT

6   KNOWLEDGE, AND THEN SPS LISTS BIVENS, MS. BURNETT, NANCY A.

7   BURNETT, A LAWYER, AND SELECT PORTFOLOI SERVICING, THE

8   DEFENDANT.

9          MS. CAMPBELL:  YOUR HONOR, OUR RESPONSE WAS

10  SUPPLEMENTED AFTER THIS RESPONSE WAS FILED.  WE HAVE IDENTIFIED

11  BY NAME SPECIFIC EMPLOYEES WHO EITHER CORRESPONDED WITH MR.

12  BIVENS OR WE KNOW SPOKE WITH MR. BIVENS.

13          THE COURT:  DID YOU FILE A COPY OF YOUR SUPPLEMENT

14  WITH US?

15          MS. CAMPBELL:  I DON'T BELIEVE THAT WE DID.  I

16  BELIEVE WE JUST SERVED IT.

17          THE COURT:  RIGHT.  WELL, LET ME TELL YOU THAT WAS A

18  MISTAKE.  IF YOU HAVE A PENDING MOTION LIKE IF YOU'RE

19  RESPONDING TO A MOTION TO COMPEL, YOU NEED TO LET US KNOW

20  WHAT'S GOING ON.

21          LET ME HEAR FROM YOU.

22          MR. CHARLES:  YOUR HONOR, I GOT THIS INFORMATION, AND

23  I WOULDN'T BE PRESSING IT IF I HAD THE INFORMATION --

24          THE COURT:  CAN I SEE THE SUPPLEMENT?

25          MR. CHARLES:  YES, YOUR HONOR.  YOU'LL NOTICE IT'S

1  MISSING SOMETHING.  IT'S A RESPONSE TO AN INTERROGATORY, AND

2  IT'S MISSING A SIGNATURE UNDER OATH.

3          THE COURT:  IT SURE IS.

4          MR. CHARLES:  AND I HAVE TWO EMAILS HERE OF MY ASKING

5  FOR THAT THAT WERE UNRESPONDED TO.

6          MS. CAMPBELL:  WE DO HAVE THE SIGNATURE, YOUR HONOR.

7  WE'RE CHECKING TO SEE IF IT'S BEEN SENT.  I AM HAPPY TO PROVIDE

8  A FORMAL SUPPLEMENTAL RESPONSE, FILE A COPY WITH THE COURT AND

9  INSURE THAT IT HAS THE PROPER VERIFICATION IF THAT WOULD

10 SATISFY THE COURT.

11         THE COURT:  OKAY.  HERE'S WHAT I'M GOING TO DO

12 CONSISTENT WITH THE APPROACH THAT I'VE BEEN TAKING.  I'M GOING

13 TO GRANT THE MOTION TO COMPEL AS TO INTERROGATORY NUMBER 3, AND

14 I EXPECT THAT WHEN THE RESPONSE IS FILED THAT IT WILL CONTAIN A

15 PROPER SIGNATURE.

16         MS. CAMPBELL:  YES, YOUR HONOR, WE WILL DO THAT.

17         MS. DISHUN:  YOUR HONOR, WOULD YOU LIKE US TO FILE

18 THAT WITH THE COURT?

19         THE COURT:  ABSOLUTELY.  I MEAN I CAN ONLY KNOW ABOUT

20 WHAT I SEE.

21         MS. DISHUN:  I ASSUMED AS MUCH.

22         THE COURT:  OKAY.  NUMBER 4, PLEASE LIST ALL ACTIONS

23 AGAINST YOU RELATED TO QWR'S FILED AFTER JANUARY 1, 2010

24 INCLUDING THE NAME OF THE FILING PARTY, ET CETERA, NUMBER OF

25 THE ACTION, DATE OF FILING, ET CETERA, ET CETERA.

1          SPS OBJECTS THAT THE INTERROGATORY IS NOT

2    APPROPRIATELY LIMITED IN TIME OR SCOPE, SEEKS INFORMATION THAT

3    IS NOT RELEVANT TO CLAIMS OR DEFENSES OF THE PARTIES IN THIS

4    LAWSUIT AND IS NOT REASONABLY CALCULATED TO LEAD TO THE

5    DISCOVERY OF EVIDENCE ADMISSIBLE IN THIS LITIGATION.  SPS ALSO

6    SAYS THE INTERROGATORY IS UNDULY BURDENSOME AND HARASSING IN

7    THAT THIS INTERROGATORY -- I'M PARAPHRASING HERE -- SEEKS

8    INFORMATION ABOUT SPS' UNRELATED BUSINESS DURING AN UNRELATED

9    PERIOD OF TIME.  INDEED, IT AMOUNTS TO AN IMPERMISSIBLE FISHING

10   EXPEDITION.

11          MR. CHARLES:  WE THINK, YOUR HONOR, IN THIS CASE

12   THERE'S MUCH LESS AMBIGUITY IN THE TERM "RELATED TO," AND IT'S

13   FOR THE ISSUE OF PROVING STATUTORY DAMAGES, PATTERN AND

14   PRACTICE --

15          THE COURT:  THE PROBLEM IS SHOWING THERE'S OTHER

16   LITIGATION DOESN'T PROVE PATTERN AND PRACTICE.  IT'S

17   UNFORTUNATE BUT TRUE THAT THIS KIND OF CASE THE DEVIL IS IN THE

18   DETAILS.

19          MR. CHARLES:  THAT'S RIGHT, YOUR HONOR, BUT IT WOULD

20   GIVE ME A PLACE TO START AND SEE IF I CAN FIND MORE INFORMATION

21   THAT WOULD BE -- THAT FOLKS HAVE BROUGHT UP IN THESE CASES.  SO

22   I UNDERSTAND IT WOULDN'T PROVE ANYTHING IN THIS CASE, BUT IT

23   WOULD GIVE ME -- IF THERE'S OTHER CASES OUT THERE, IT WOULD

24   GIVE ME INFORMATION THAT WOULD BE USEFUL IN THIS CASE.

25          THE COURT:  ARE THERE OTHER OUTSTANDING ACTIONS

1    PRESENTLY AGAINST SPS?

2           MS. CAMPBELL:  LITIGATION GENERALLY, ARE THERE OTHER

3    CASES OUTSTANDING, YES.

4           THE COURT:  RESPA CASES.

5           MS. CAMPBELL:  I THINK IT IS FAIR TO SAY, YOUR HONOR,

6    THERE ARE OTHER CASES WHERE A RESPA CLAIM HAS BEEN ALLEGED OR

7    MENTIONED SOMEWHERE IN PLEADINGS.  I THINK PART OF THE

8    DIFFICULTY WITH RESPONDING TO THIS REQUEST IS WE HAVE -- SPS

9    GETS CASES WHERE PRO SE PLAINTIFFS WILL FILE A LAUNDRY LIST OF

10   ALLEGATIONS THAT MAY INCLUDE RESPA IN THE PRAYER.

11          I THINK IT'S BEEN SPS' PRACTICE TO ERR ON THE SIDE OF

12   CAUTION AND RESPOND TO WHAT THEY NEED TO RESPOND TO WHEN SUCH

13   LITIGATION IS FILED.  IN ORDER TO RESPOND TO THIS REQUEST, THEY

14   WOULD ESSENTIALLY HAVE TO GO THROUGH EVERY SINGLE CASE THAT HAS

15   BEEN FILED AGAINST THEM, REVIEW THE PLEADINGS TO --

16          THE COURT:  BUT SURELY IT WOULD EASY ENOUGH TO FIND

17   OUT WHETHER CASES HAVE BEEN FILED THAT -- LET'S LIMIT IT TO

18   CASES WHERE THERE'S COUNSEL FOR THE PLAINTIFF.

19          MR. CHARLES:  BUT, YOUR HONOR --

20          MS. CAMPBELL:  SINCE 2010 THEY HAVE SERVICED HUNDREDS

21   OF THOUSANDS OF LOANS IN ALL 50 STATES.  I THINK THEY'VE

22   HANDLED HUNDREDS OF THOUSANDS --

23          THE COURT:  THEY MUST HAVE HOUSE COUNSEL WHO KNOW

24   WHAT CLAIMS ARE PENDING.

25          MS. CAMPBELL:  I DON'T KNOW THAT THEY -- IT'S MY

1  UNDERSTANDING THEY DON'T TRACK IT INTERNALLY THAT WAY.   THEY

2  MAY CATEGORIZE A PARTICULAR TYPE OF CASE, BUT THEY ARE NOT

3  LISTING EVERY TYPE OF CLAIM THAT HAS BEEN ALLEGED.

4           SO IN ORDER TO RESPOND TO THIS INTERROGATORY

5  ACCURATELY, THEY WOULD HAVE TO PULL UP THE PLEADING FOR EACH

6  CASE TO DETERMINE WHETHER AN ACTION HAS BEEN FILED THAT RELATES

7  TO QWR'S.

8           AGAIN WOULD THAT INCLUDE AN ACTION WHERE SOMEONE HAS

9  JUST MENTIONED THE TERM QWR?  ARE WE MAKING A DETERMINATION

10  WHETHER IT WAS REALLY ABOUT SOMETHING THAT CONSTITUTED A QWR?

11  IT'S JUST AN INCREDIBLY BURDENSOME REQUEST GIVEN THE SCOPE OF

12  THE CLAIMS HERE, AND WE WOULD ALSO NOTE GOING BACK TO JANUARY

13  1, 2010, THE LIMITATION IN TIME AND SCOPE IS NOT APPROPRIATE.

14           THE COURT:  I'LL GRANT THIS IN PART, AND I WILL

15  DIRECT SPS FILE A SUPPLEMENTAL RESPONSE THAT REFLECTS CASES IN

16  WHICH A CAUSE OF ACTION IS ASSERTED CLAIMING A VIOLATION OF

17  RESPA BASED ON THE FAILURE TO RESPOND TO A QWR, AND I'LL LIMIT

18  THAT, AS I SAID, TO CASES WHERE THE PLAINTIFF HAD A LAWYER AND

19  ALSO CASES FILED IN THE LAST YEAR.

20           MS. CAMPBELL:  YOUR HONOR, IF I MAY, CASES IN THE

21  LAST YEAR WOULD BE SUBJECT TO THE NEW RESPA STATUTE WHICH WAS

22  NOT IN EFFECT AT THE TIME OF THE STATUTE THAT WE'RE DEALING

23  WITH NOW.  THE LETTER THAT'S AT ISSUE IN THIS CASE IS FROM

24  DECEMBER OF 2012, AND SO THERE HAVE BEEN CHANGES TO THE

25  SERVICING REGULATIONS OF RESPA THAT WENT INTO EFFECT JANUARY

1  10, 2014, AND SO IF YOU'RE CAPSULIZING CASES --

2            THE COURT:  OKAY.  YOU SAID THAT DATE WAS WHAT,

3  DECEMBER?

4            MS. CAMPBELL:  OUR CASE IS DECEMBER 2012.  I THINK

5  THE LETTER WAS DECEMBER 12TH OF 2012, THAT'S OUR CASE.

6            MR. CHARLES:  AND THE CHANGE HAPPENED JANUARY 10TH,

7  2014.

8            MS. CAMPBELL:  AND MY POINT IS THERE MAY BE THINGS IN

9  THE LAST YEAR THAT PEOPLE HAVE FILED RESPA CLAIMS --

10            THE COURT:  AND YOU THINK THIS CHANGE IN JANUARY 2014

11  WOULD BEAR ON THE RESPA CLAIMS MADE IN THIS CASE?

12            MS. CAMPBELL:  NO, I DON'T, AND THAT'S WHAT I'M

13  SAYING, YOUR HONOR HAS INDICATED YOU WOULD LIMIT THE TIMEFRAME

14  FOR US TO RESPOND TO THIS REQUEST TO THE LAST YEAR, AND MY

15  POINT WAS IF WE LIMIT IT TO THE LAST YEAR, WE'RE PROBABLY

16  PULLING IN CASES THAT HAVE ALLEGED RESPA VIOLATIONS UNDER THE

17  NEW PROVISIONS OF THE STATUTE.

18            THE COURT:  WHAT NEW PROVISIONS OF THE STATUTE ARE

19  YOU TALKING ABOUT?

20            MS. CAMPBELL:  THERE IS CERTAIN LANGUAGE THAT HAS

21  CHANGED IN RESPA ABOUT, FOR EXAMPLE, RESPONDING TO QWR'S.  AT

22  THE TIME THAT OUR CASE, THE CLAIM IN OUR CASE CLAIM WAS FILED

23  IN DECEMBER 2012, THE ACKNOWLEDGMENT TIMEFRAME WAS 20 DAYS.

24  NOW IT'S FIVE DAYS.

25            SO, FOR EXAMPLE, IF YOU HAVE SOMEONE WHO HAS MADE A

1  CLAIM IN THE LAST YEAR THAT SPS DIDN'T TIMELY RESPOND, IT'S NOT

2  EVEN GOING TO BE THE SAME TIMEFRAME AS WHAT WAS IN EFFECT AT

3  THE TIME OF OUR CLAIM.

4            MR. CHARLES:  SO YOUR PERIOD BUT A DIFFERENT YEAR

5  PERIOD.

6            THE COURT:  SO WHAT DO YOU THINK WOULD BE PROPER?

7            MR. CHARLES:  ANYTHING THAT GOT FILED, LET'S SAY, THE

8  YEAR JANUARY 10TH, 2013 TO JANUARY 10TH, 2014.  THOSE WOULD ALL

9  BE CASES WHERE THE ALLEGATION WAS -- WHERE THE COMPLAINT --

10           THE COURT:  LET'S GO WITH DECEMBER 31 --

11           MS. CAMPBELL:  YOUR HONOR, I DO HAVE --

12           THE COURT:  JUST A MINUTE.  SO TO MAKE IT A YEAR, IT

13  WOULD BE JANUARY 10, 2013 TO JANUARY 9, 2014.

14           OKAY.  DID YOU WANT TO SAY SOMETHING?

15           MS. CAMPBELL:  YES, YOUR HONOR, I AM CONCERNED

16  THAT WE MAY NOT HAVE THE ABILITY TO EASILY COMPILE THIS

17  INFORMATION WITH --

18           THE COURT:  I BELIEVE THERE'S SOMEONE AT SPS THAT

19  COULD COMPILE IT.  I MEAN IF THESE PEOPLE KNOW ANYTHING ABOUT

20  BUSINESS THAT YOU NEED TO HAVE SOME CENTRAL BOOKKEEPING.  I

21  FIND IT VERY DIFFICULT TO BELIEVE THAT SPS DOES NOT HAVE ANY

22  RECORDS ABOUT CASES FILED AGAINST IT, ESPECIALLY THOSE FILED BY

23  LITIGANTS WHO PAY A FILING FEE AND HAVE A LAWYER.

24           MS. CAMPBELL:  I'M NOT SUGGESTING, YOUR HONOR, THAT

25  THEY'RE NOT KEEPING RECORDS.  I'M NOT SURE THAT THE WAY THEY

1 KEEP THEIR RECORDS IS THE WAY THAT THE COURT --

2          THE COURT:  WE'LL THEY'RE GOING TO HAVE TROUBLE

3 ANSWERING THIS, BUT I'M GRANTING THIS MOTION --

4          MS. CAMPBELL:  UNDERSTOOD.

5          THE COURT:  -- IN PART.  I AM GRANTING IT AS TO --

6          MR. CHARLES:  YOU SAID CAUSES OF ACTION ASSERTING A

7 RESPA QWR CLAIM --

8          THE COURT:  YES.

9          MR. CHARLES:  -- WHERE THEY HAD A LAWYER.  ALTHOUGH

10 ONE THING I WOULD POINT OUT --

11          THE COURT:  AND IT WOULD BE ACTIONS FILED STARTING

12 JANUARY 10TH, 2013 GOING THROUGH JANUARY 9TH, 2014.

13          MS. CAMPBELL:  AND THAT DATE RANGE DOES NOT

14 ENCAPSULATE DECEMBER OF 2012 WHICH IS WHEN THE LETTER WAS SENT

15 IN OUR CASE.

16          THE COURT:  OKAY.  ARE YOU SATISFIED WITH IT?

17          MR. CHARLES:  YES, YOUR HONOR.

18          THE COURT:  I MEAN I KNOW IT'S NOT WHAT YOU'RE ASKING

19 FOR.

20          MR. CHARLES:  YOUR HONOR, YES, BUT IT SHOULD WORK

21 OUT.  IT SHOULD PROVIDE USEFUL INFORMATION.

22          MS. CAMPBELL:  YOUR HONOR, THIS IS AS TO ALL 50

23 STATES?

24          THE COURT:  YEP, SURE IS.  AND, YOU KNOW, WHAT I'M

25 THINKING IS THAT IT MAY BE HELPFUL TO THE PLAINTIFF TO HAVE

1    INFORMATION ABOUT WHAT PEOPLE ARE DOING IN OTHER LAWSUITS.

2              I'M NOT NAIVE ABOUT THIS.  I THINK THAT MR. CHARLES

3    PROBABLY HAS A LOT OF GOOD IDEAS OR A LOT OF IDEAS CERTAINLY OF

4    HIS OWN, AND I DON'T NECESSARILY THINK THAT THERE ARE PEOPLE

5    OUT THERE WHO HAVE THOUGHT OF THINGS THAT YOU HAVEN'T THOUGHT

6    OF, BUT THEY MIGHT HAVE.

7              ALL RIGHT.  IS THAT ALL OF THEM?  MY DOCUMENTATION --

8    ARE THERE ANY OTHER INTERROGATORY REQUESTS?

9              MR. CHARLES:  YES, YOUR HONOR, THERE'S NUMBER -- THE

10   REST OF THEM, NUMBER 2 -- WELL, I'M SORRY --

11             MS. CAMPBELL:  I'M CONFUSED, ARE WE TALKING ABOUT ARE

12   THERE ANY MORE INTERROGATORIES?

13             THE COURT:  NO, WHAT I WAS ASKING -- I WAS RULING ON

14   PLAINTIFF'S MOTION TO COMPEL FURTHER ANSWERS TO

15   INTERROGATORIES, AND QUITE FRANKLY MY POOP SHEET HERE STOPS AT

16   INTERROGATORY 4.

17             MR. CHARLES:  YES, YOUR HONOR, THAT'S IT FOR THE

18   FIRST ONE.

19             THE COURT:  OKAY.  SO WE'RE FINISHED NOW WITH THE

20   FIRST MOTION TO COMPEL.

21             MR. CHARLES:  YOU KNOW, THOUGH, IT'S POSSIBLE THAT

22   SINCE THE REQUEST FOR PRODUCTION INCLUDED DOCUMENTS YOU USED TO

23   ANSWER THE QUESTIONS, THEN WHEN THE INTERROGATORY -- SO WHEN

24   THEY SAY OKAY, THERE'S AN ACTION IN THIS CASE, THEN SOME

25   DOCUMENT PRODUCTION WILL GO ALONG WITH THAT.

1         THE COURT:  I DON'T KNOW WHAT YOU MEAN BY THAT.  I

2  MEAN I'VE RULED ON THE OUTSTANDING REQUESTS, I THINK.

3         MR. CHARLES:  YES, YOUR HONOR, AND THIS RULING SHOULD

4  COVER THAT, BUT TO MAKE SURE THERE'S NO CONFUSION -- TO TRY TO

5  AVOID CONFUSION, THE REQUESTS FOR PRODUCTION SAID PLEASE SEND

6  ANY DOCUMENTS YOU LOOKED AT IN ANSWERING THIS.  SO TO THE

7  EXTENT THAT SOMEONE READS THROUGH A COMPLAINT TO ANSWER WHETHER

8  OR NOT IT HAD A QUALIFIED WRITTEN REQUEST, THEN THEY SHOULD

9  SEND ME A COPY OF THAT COMPLAINT.

10        MS. CAMPBELL:  YOUR HONOR, IF I MAY OBJECT --

11        THE COURT:  NO, I DIDN'T SAY THAT.  WHAT I SAID WAS

12  THAT I WAS GRANTING YOUR MOTION TO COMPEL INTERROGATORY NUMBER

13  4, AND IF THEY GIVE THAT YOU INFORMATION, THEN IT'S GOING TO BE

14  UP TO YOU TO FOLLOW THROUGH AND CALL COUNSEL OR WHATEVER YOU

15  WANT TO DO.

16        MR. CHARLES:  YEAH, BUT THAT'S PART OF -- THAT GOES

17  BACK TO REQUEST FOR PRODUCTION WHICH YOU DID GRANT --

18        THE COURT:  LET'S MOVE ONTO THE SECOND REQUEST FOR

19  PRODUCTION.

20        MS. CAMPBELL:  YOUR HONOR, BEFORE WE MOVE ON, I

21  BELIEVE WE SKIPPED REQUEST NUMBER 8 JUST SO THAT THE RECORD IS

22  CLEAR.  I THINK WE STILL NEED A RULING ON THAT REQUEST.  IT'S

23  ON PAGE 12 OF THE DOCUMENT YOU WERE PREVIOUSLY LOOKING AT.

24        THE COURT:  I DO NOT KNOW ANYTHING ABOUT REQUEST

25  NUMBER 8 IN CONNECTION WITH THE PLAINTIFF'S FIRST REQUEST FOR

1  PRODUCTION OF DOCUMENTS.

2           IS THERE A MOTION TO COMPEL AS TO THAT ONE?

3           MS. CAMPBELL:  IT WAS INCLUDED IN PLAINTIFF'S INITIAL

4  MOTION AS DOCUMENT 27.

5           MR. CHARLES:  YOUR HONOR, PAGE 12.

6           THE COURT:  PAGE 12 OF WHAT?

7           MR. CHARLES:  PAGE 12 OF THE FIRST MOTION TO COMPEL.

8           THE COURT:  MAY I TAKE A LOOK AT WHAT YOU'VE GOT

9  THERE.  JUST HOLD ON A MINUTE, I THINK MY LAW CLERK MAY HAVE

10  WHAT I'M LOOKING FOR.

11          MS. CAMPBELL:  IT WAS DEALT WITH AT THE SAME TIME OF

12  OUR OBJECTIONS WHICH ARE IN DOCKET NUMBER 31.  WE GROUPED

13  REQUESTS 7 AND 8 TOGETHER BECAUSE THEY ARE VERY SIMILAR.

14          THE COURT:  OKAY.  SO PLAINTIFF IS MOVING TO COMPEL

15  IS WHAT YOU'RE TELLING ME, AND I SEE IT NOW IN THE MOTION TO

16  COMPEL RESPONSES FILED BY THE PLAINTIFF, REQUEST NUMBER 8 SAYS

17  PLEASE PRODUCE COPIES OF ALL DOCUMENTS RELATED TO QWR'S TO

18  WHICH A PART OF YOUR RESPONSE STATED THAT BECAUSE PLAINTIFF HAD

19  INITIATED LITIGATION REGARDING THE LOAN, THE ISSUE HAD BEEN

20  ASSIGNED TO OUTSIDE COUNSEL.  I THINK THE PHRASEOLOGY "COPIES

21  OF ALL DOCUMENTS RELATED TO QWR'S" IS IMPOSSIBLY BROAD, AND I

22  WILL NOT COMPEL FURTHER RESPONSE TO THAT.

23          I THINK NOW WE'RE READY TO MOVE ONTO THE SECOND

24  REQUEST FOR PRODUCTION, THE MOTION TO COMPEL CERTAIN -- THE

25  PRODUCTION OF CERTAIN DOCUMENTS.  WITH RESPECT TO REQUEST

1  NUMBER 1, PLEASE PRODUCE COPIES OF ALL DOCUMENTS RELATED TO THE

2  DETERMINATION OF THE WORDING, TEXTUAL DESIGN AND LAYOUT OF ANY

3  DOCUMENT YOU SENT MR. BIVENS THAT DESIGNATED A SPECIFIC ADDRESS

4  FOR DISPUTES AND INQUIRIES LIKE DOCUMENT SPS45.  AGAIN I THINK

5  THE WORDS "RELATED TO" ARE FATAL TO THIS REQUEST.  IT'S

6  ENDLESSLY AMBIGUOUS AND OVERLY BROAD.

7          WITH RESPECT TO REQUEST NUMBER 2, PLEASE PRODUCE

8  COPIES OF ALL DOCUMENTS RELATED TO POLICIES AND PROCEDURES YOU

9  HAVE FOR RESPONDING TO CORRESPONDENCE SENT TO PO BOX 65250.

10 AGAIN THE PHRASE "RELATED TO" IS TOO BROAD.  I WILL NOT COMPEL

11 A FURTHER RESPONSE TO REQUEST NUMBER 2.

12         SAME RULING ON NUMBER 3.  IT'S TOO BROAD AND

13 AMBIGUOUS.

14         WITH RESPECT TO NUMBER 4, THE SAME RULING ALL

15 DOCUMENTS RELATED TO THE DECISION TO DESIGNATE, WHO KNOWS WHAT

16 THAT MIGHT INCLUDE.  SO I WILL NOT COMPEL A FURTHER RESPONSE

17 THERE.

18         PLEASE PRODUCE COPIES OF ALL DOCUMENTS RELATED TO THE

19 ISSUES, THIS IS NUMBER 5, OF PROVIDING AN EXCLUSIVE ADDRESS FOR

20 QUALIFIED WRITTEN RESPONSES.  SAME RULING HERE.  IT'S TOO

21 BROAD.  I WON'T COMPEL A FURTHER RESPONSE.

22         REQUEST NUMBER 6 IS PLEASE PRODUCE COPIES OF ALL

23 CORRESPONDENCE RECEIVED AT PO BOX 65250 IN SALT LAKE CITY FROM

24 JANUARY 1, 2012 UNTIL DECEMBER 3, 2013 AND COPIES OF ALL SPS'

25 RESPONSES TO EACH.  I THINK THAT IS OVERLY BROAD AND

1  BURDENSOME.  IT WOULD REQUIRE PROBABLY A HUGE AMOUNT OF

2  DOCUMENTATION.

3          MR. CHARLES:  YOUR HONOR, CAN WE LIMIT THAT AND

4  NARROW THAT IN TIME THEN?

5          THE COURT:  NO.

6          MR. CHARLES:  YOU'RE STUCK WITH WHAT YOU GOT.

7          WITH RESPECT TO NUMBER 7, PLEASE PRODUCE COPIES OF

8  ALL CORRESPONDENCE RECEIVED AT PO BOX 65277 IN SALT LAKE CITY

9  FROM JANUARY 1, 2012 UNTIL DECEMBER 3, 2013, AND COPIES OF ALL

10 SPS' RESPONSES TO EACH.  I THINK THAT IS TOO BROAD AND

11 BURDENSOME, AND I WILL NOT COMPEL A FURTHER RESPONSE.

12          THEN MOVING ON TO REQUEST NUMBER 8, PLEASE PRODUCE

13 COPIES OF ALL DOCUMENTS SHOWING YOU HAVE A RIGHT TO SERVICE A

14 LOAN TO MR. BIVENS CONNECTED TO THE SECURITY DEED FILED IN

15 GWINNETT COUNTY, GEORGIA.  I'D LIKE TO HEAR FROM DEFENSE

16 COUNSEL ON THIS.  I'M NOT TOO SURE.

17          MS. CAMPBELL:  WELL, I THINK FIRST, YOUR HONOR, I'M

18 NOT SURE IT'S RELEVANT.  WE'VE ADMITTED WE'RE THE SERVICER.  I

19 DON'T THINK THAT'S AN ISSUE THAT'S IN DISPUTE HERE.  AGAIN HE'S

20 ALLEGED IT AND WE'VE ADMITTED IT IN OUR ANSWERS, AND THE COURT

21 HAS MADE A RULING ON PRIOR MOTIONS TO DISMISS ON THE BASIS THAT

22 WE ARE IN FACT THE SERVICER.

23          SETTING ASIDE -- WITHOUT WAIVING THAT OBJECTION, I

24 WOULD ALSO TELL THE COURT THAT WE HAVE PROVIDED DOCUMENTS

25 RELATING TO THE LOAN HISTORY.  I'M NOT SURE THAT THERE'S

1   ANYTHING ELSE TO PROVIDE HERE.  I MEAN HE'S ESSENTIALLY ASKING

2   US TO PROVE SOMETHING THAT WE'VE ALREADY ADMITTED TO.

3             TO THE EXTENT THAT HE'S SEEKING INFORMATION ABOUT OUR

4   RELATIONSHIP WITH THE TRUSTEE, I'M NOT SURE THAT HE'S ENTITLED

5   TO THAT INFORMATION.  I THINK THAT INVOLVES BUSINESS AND

6   PROPRIETARY INFORMATION.  HE'S ASKED FOR ALL DOCUMENTS RELATING

7   TO THAT RELATIONSHIP --

8             MR. CHARLES:  I WOULD NOTE THERE'S NO "RELATED TO" IN

9   THERE.

10            THE COURT:  I NOTICED THAT.

11            MR. CHARLES:  THAT'S ALL WE'VE BEEN TALKING ABOUT.

12            THE COURT:  AND WE'RE STILL TALKING --

13            MR. CHARLES:  I'M GOING TO BE SCARED OF THE WORD

14   "RELATED TO" FOR THE REST OF MY LIFE.

15            MS. CAMPBELL:  ALL DOCUMENTS SHOWING THAT WE HAVE THE

16   RIGHT TO SERVICE THE LOAN, I WOULD PRESENT TO THE COURT THAT WE

17   HAVE PRODUCED DOCUMENTS RELATING TO OUR RIGHT TO SERVICE THE

18   LOAN, AND WE'VE PRODUCED THE DOCUMENTS RELATING TO THE LOAN

19   ITSELF.

20            SO TO THE EXTENT THAT HE'S GOING TO CONTINUE TO PUSH

21   ON THIS, I THINK IT'S COMPOUND AND DUPLICATIVE.  IT'S IMPROPER

22   AND HARASSING.  I THINK WE'VE ALREADY PRODUCED EVERYTHING, AND

23   I DON'T THINK IT'S RELEVANT.

24            MR. CHARLES:  YOUR HONOR, I HAVEN'T SEEN ANY OF THOSE

25   DOCUMENTS THAT SHOW THAT.  IN FACT, I GOT A VERY INTERESTING

1  DOCUMENT IN THE LAST WRITTEN REQUEST FROM MY CLIENT THAT SHOWS

2  THE QUESTION WAS -- WELL, FIRST, I'D LIKE TO CLEAR SOMETHING

3  UP.  DEFENSE COUNSEL KEEPS SAYING THAT PLAINTIFF ALLEGED THAT

4  SPS WAS THE SERVICER IN THE COMPLAINT.  THAT'S NOT TRUE.

5  PLAINTIFF ALLEGED SPS REPRESENTS THAT IT IS THE SERVICER.

6  TOTALLY DIFFERENT.

7          THE COURT:  WELL, THEY ARE THE ONES SENDING THE

8  STUFF -- WHO DID SEND THE STUFF TO THE PLAINTIFF --

9          MR. CHARLES:  RIGHT.

10         THE COURT:  -- AND THAT'S WHAT MOST PEOPLE THINK OF

11  AS A SERVICER.

12         MR. CHARLES:  SURE, AND THAT'S THE THING IS IT TRUE

13  OR NOT.  IF IT'S NOT TRUE, IT DOESN'T MATTER WHETHER MY CLIENT

14  SAYS IT IS AND WHETHER DEFENSE AGREES THAT IT IS, THE COURT

15  DOESN'T HAVE STANDING.  THE COURT DOESN'T HAVE JURISDICTION TO

16  HEAR IT.

17         BUT HERE'S ONE OF THE DOCUMENTS THAT'S VERY NEW, YOU

18  KNOW, WE'VE BEEN SENT STUFF AND SENT STUFF, I HEAR THAT, BUT I

19  DON'T GET THE INFORMATION.  THIS IS PLEASE SEND ME SOME

20  CONFIRMATION FROM THE CURRENT NOTEHOLDER THAT YOU ARE THE

21  AGENT.  SO I RECEIVED A LIMITED POWER OF ATTORNEY, AND IT'S

22  DATED 4-20.  IT WAS RECORDED IN THE COURT A MONTH AND A HALF

23  AGO.

24         MS. CAMPBELL:  YOUR HONOR, IF I MAY BE HEARD JUST

25  BRIEFLY?

1          MR. CHARLES:  SO AT THE VERY LEAST WE'RE NOT GETTING

2    INFORMATION SHOWING THAT THEY HAD THE RIGHT TO BE THE SERVICER

3    AT THE TIME IN QUESTION.

4          THE COURT:  I THINK WHAT IS KEY HERE, WHERE YOUR

5    LEGITIMATE INTEREST LIES IS IN THIS CHAIN OF TITLE BUSINESS,

6    YOU KNOW, WHO OWNED WHAT, AND I'M GOING TO GRANT YOUR MOTION ON

7    REQUEST NUMBER 8, BUT ONLY TO THE EXTENT OF REQUIRING THAT THE,

8    WHAT I'M GOING TO REFER TO AS THE CHAIN OF TITLE STUFF, AND

9    EVEN THOUGH I HEAR YOU SAYING YOU'VE GIVEN IT TO MR. CHARLES

10   BEFORE, YOU'RE GOING TO HAVE TO FILE WITH THE COURT A WRITTEN

11   RESPONSE THAT SHOWS WHAT YOU ARE GIVING TO HIM IN RESPONSE TO

12   THIS INTERROGATORY SO THAT THE COURT'S RECORDS WILL BE CLEAR.

13   YOU DON'T HAVE TO GIVE ME COPIES OF ALL THE DOCUMENTS.

14         AND IF MR. CHARLES THINKS AFTER HE READS YOUR WRITTEN

15   RESPONSE TO THIS INTERROGATORY, YOUR SUPPLEMENTAL RESPONSE,

16   THAT HE DOES NOT HAVE THOSE DOCUMENTS ALREADY, THEN ME MAY CALL

17   YOU, AND AT THAT POINT YOU WILL HAVE TO SEND HIM COPIES WHETHER

18   OR NOT HE HAS RECEIVED THEM BEFORE.

19         MS. CAMPBELL:  YES, YOUR HONOR.

20         THE COURT:  OKAY.  GIVEN THE RULINGS I'VE MADE, THERE

21   WILL BE NO AWARD OF ATTORNEY'S FEES TO EITHER SIDE, AND I THINK

22   THAT COMPLETES THE BUSINESS BEFORE ME.

23         THERE IS A MOTION FOR EXTENSION OF TIME; IS THAT YOUR

24   MOTION?

25         MS. CAMPBELL:  IT IS OUR MOTION, YOUR HONOR, BECAUSE

1    WHEN ALL THIS STARTED HAPPENING, WE HAD SOME DEPOSITIONS

2    SCHEDULED THAT THEN DID NOT GO FORWARD.  WE WOULD LIKE TO HAVE

3    DISCOVERY EXTENDED FOR THE PURPOSE OF COMPLETING THOSE

4    DEPOSITIONS, AND THAT IS THE DEPOSITION OF PLAINTIFF HIMSELF,

5    THE DEPOSITION PLAINTIFF'S PRIOR COUNSEL, AND THE DEPOSITION OF

6    THE PHYSICIAN THAT PLAINTIFF HAS ALLEGED HE RECEIVED TREATMENT

7    FROM.

8          THE COURT:  HAVE YOU EVER NOTICED THOSE DEPOSITIONS?

9          MS. CAMPBELL:  WE HAVE, YOUR HONOR, WE HAVE, AND WE

10   HAD AN AGREEMENT WITH MR. CHARLES ON THE DATES AND A SCHEDULE

11   FOR THOSE DEPOSITIONS, AND WHEN WE COULD NOT REACH AN AGREEMENT

12   ON DISCOVERY, HE DECLINED TO APPEAR FOR THOSE DEPOSITIONS AND

13   HAS INDICATED HE NOW OPPOSES OUR MOTION TO EXTEND DISCOVERY.

14         THE COURT:  WHAT KIND OF EXTENSION DO YOU WANT?

15         MS. CAMPBELL:  JUST SUFFICIENT TIME SO THAT --

16         THE COURT:  TELL ME WHAT YOU WANT.

17         MS. DISHUN:  I JUST WANTED TO NOTE THAT WE NOTICED A

18   DOCTOR'S DEPOSITION.  IN TALKING WITH THAT DOCTOR, WE NEED A

19   DIFFERENT DOCTOR'S DEPOSITION, AND WE WERE PREPARED TO SWAP OUT

20   THE DOCTORS ON THAT DATE --

21         THE COURT:  I DON'T CARE ABOUT THAT.

22         MS. DISHUN:  I JUST WANTED TO BE CLEAR SO THAT WE'RE

23   NOT LIMITED IN THAT RESPECT.

24         THE COURT:  I WANT TO KNOW WHAT KIND OF EXTENSION

25   YOU'RE ASKING FOR.

1          MS. CAMPBELL:  FULLY FOR THE PURPOSES OF SCHEDULING,

2  I THINK SIX WEEKS SHOULD PROBABLY DO IT.  I KNOW I HAVE

3  DEPOSITIONS THE ENTIRE WEEK OF JUNE 22ND THROUGH 25TH AND THE

4  VERY NEXT WEEK THAT GOES THROUGH THE FIRST WEEK OF JULY ON

5  ANOTHER CASE THAT ARE ALREADY SCHEDULED THAT INVOLVED

6  COORDINATION --

7          THE COURT:  SO YOU WANT SIX WEEKS FROM NOW TO

8  COMPLETE ALL DISCOVERY IN THE CASE?

9          MS. CAMPBELL:  I THINK THAT SHOULD BE SUFFICIENT.

10          MR. CHARLES:  YOUR HONOR, AND THAT WOULD BE

11  DISCOVERY -- SO THAT WOULD NOT BE A LIMITED DEADLINE FOR JUST

12  THIS, BUT IT WOULD BE A SIX WEEK DISCOVERY DEADLINE SO THAT I

13  CAN FIX WHATEVER MISTAKES THE COURT HAS RULED I COMMITTED HERE

14  TODAY.  SO I CAN --

15          THE COURT:  WHAT AMOUNT?  DO YOU WANT A DISCOVERY

16  EXTENSION ALSO THEN?

17          MR. CHARLES:  YES, YOUR HONOR.

18          THE COURT:  OKAY.  HOW MUCH EXTENSION DO YOU FEEL IS

19  APPROPRIATE?

20          MR. CHARLES:  I THINK 60 DAYS FOR EVERYBODY WOULD

21  PROBABLY BE THE EASIEST WAY TO DO THIS.

22          THE COURT:  OKAY.  SO 60 DAYS OR TWO MONTHS, AND YOU

23  ALL ARE ASKING FOR --

24          MR. CHARLES:  I DON'T THINK THE SIX WEEKS WOULD BE A

25  PROBLEM NECESSARILY.  IT GIVES ME ABOUT A WEEK TO GET MY

1  REQUESTS REDONE AND SENT OUT.

2          MS. CAMPBELL:  WE HAVE NO OBJECTION TO 60 DAYS.

3          THE COURT:  OKAY.  I WILL EXTEND THE DISCOVERY

4  DEADLINE FOR ALL DISCOVERY TO BE COMPLETED FOR AN ADDITIONAL 60

5  DAYS FROM TODAY.

6          MS. CAMPBELL:  YES, YOUR HONOR, THANK YOU.

7          THE COURT:  IS THERE ANYTHING ELSE I HAVE NOT RULED

8  ON?  I GUESS NOT.  THANK YOU.

9          MR. CHARLES:  YOU MEAN IN THIS CASE, YOUR HONOR?

10         THE COURT:  YOU BET.  OH, YEAH.

11         (PROCEEDINGS CONCLUDED.)

12

13

14

15                  REPORTER'S CERTIFICATION

16

17

18  I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

19  RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

20

21                              ANDRE G. ASHLEY
                                OFFICIAL COURT REPORTER
22                              UNITED DISTRICT COURT
                                NORTHERN DISTRICT OF GEORGIA
23

24  DATE: 7/10/2015

25