FILED IN CHAMBERS
U.S.D.C. - Atlanta

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**JUL 0 8 2016**

James N. Hatten, Clerk
By: _____ Deputy Clerk

STEVEN BIVENS,

        Plaintiff

v.

SELECT PORTFOLIO SERVICING,
INC.,

        Defendant

CIVIL ACTION NO.
1:14-CV-1569-ODE

## ORDER

This action alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605 et seq., is before the Court on the following motions: (1) Defendant Select Portfolio Servicing, Inc.'s ("SPS") Motion for Summary Judgment [Doc. 87], to which Plaintiff Steven Bivens has responded in opposition [Doc. 90], and SPS has replied [Doc. 91]; and (2) Plaintiff's Motion to Reopen Discovery [Doc. 93], to which SPS has responded in opposition [Doc. 95], and for which Plaintiff has filed a reply [Doc. 96].

For the reasons discussed below, SPS's Motion for Summary Judgment [Doc. 87] is GRANTED and Plaintiff's Motion to Reopen Discovery [Doc. 93] is DENIED.

## I.  Background

The following facts are undisputed unless otherwise stated. Plaintiff's sole claim relates to SPS's servicing of a 2006 loan from Mortgage Lenders Network to purchase a residential property [see Doc. 1; Def.'s Statement of Undisputed Material Facts ("SMF"), Doc. 87-1 ¶ 1]. In 2010, Plaintiff stopped paying his loan [Def.'s SMF ¶ 2]. In February 2011, Plaintiff hired attorney Nancy Burnett [Id. ¶ 3].

On December 4 or 5, 2012, SPS sent a letter to Plaintiff ("the Hello Letter") stating that it had been assigned the servicing rights to his loan, effective December 1, 2012 [Id. ¶¶ 7, 8]. The Hello Letter stated,

> If you wish to send a written request about your account or dispute any of the information on this statement, please do not include it with your monthly payment. All written requests must be sent to the address listed below for Disputes/Inquires [sic], as this is our exclusive address for processing these matters. If you send your request or dispute to any other address, it may not be processed in accordance with our Customer Service Timelines. [Id. ¶ 9].

Further, it provided three "Important Mailing Addresses," including a "General Correspondence" address, a "Payment Remittance" address, and an address for "Disputes/Inquires." [Id. ¶ 10]. The address for General Correspondence was "P.O. Box 65250, Salt Lake City, UT," and the address for "Disputes/Inquires" was "P.O. Box 65277, Salt Lake City, UT." [Id.]. Mail sent to these addresses went to different boxes at the same physical location, and was handled by the same department and the same employees [Pl.'s Additional SMF, Doc. 91-2 ¶ 5].

On December 10, 2012, Plaintiff, through Burnett, filed a quiet title petition in the Superior Court of Gwinnett County, Georgia, against several defendants, including SPS and Wells Fargo Bank, National Association, as Trustee for the Certificateholders of the SASCO 2007-MLN1 Trust ("SASCO MLN1 Trust") [Def.'s SMF, Doc. 87-1 ¶ 12]. Burnett set out the terms of the note in the quiet title petition [Id. ¶ 22].

On December 17, 2012, Burnett sent a letter on behalf of Plaintiff to SPS at P.O. Box 65250 [Id. ¶¶ 13, 14]. The December 17 letter asserted a challenge to SPS's standing to enforce the loan

obligation, requested loan origination documents, the identity of the current holder of the mortgage, and information about the transfer and assignment of various interests in the mortgage [Id. ¶¶ 16-17]. It also requested a certified copy of Plaintiff's note [Id. ¶ 18].

SPS received the December 17 letter on December 24 at its General Correspondence address [Id. ¶ 26]. SPS sent Plaintiff two letters on December 27 [Id. ¶ 28]. One letter stated that "Wells Fargo Bank, N.A., as Trustee, in Trust for SASCO 2007-MLN1 Trust Fund is the owner of the account, and SPS is the mortgage servicer of the account." [Id.]. The other stated that Plaintiff's December 17 letter was received at the address for General Correspondence, but was forwarded to the appropriate department for handling [Id. ¶ 30]. It further stated, "[a]s a reminder, all written disputes/inquires [sic] must be sent to the address listed below as this is our exclusive address for processing these matters." [Id.]. Then it provided the P.O. Box. 65277 address [Id.].

In addition to the December 27 letters, SPS sent: (1) an acknowledgment letter to Burnett on December 31, identifying the SASCO trust as the holder of Plaintiff's note; (2) a January 3, 2013 letter to Plaintiff stating that the December 17 letter was sent to the address for General Correspondence rather than the address for Disputes/Inquires; and (3) a January 30, 2013 letter to Burnett stating that the matter had been assigned to outside counsel as Plaintiff had initiated the quiet title litigation [Id. ¶¶ 31-33]. Subsequently Burnett communicated with counsel for SPS, Elizabeth Campbell [Id. ¶ 34]. Additionally, SPS sent Burnett a copy of the note on September 11, 2013 [Id. ¶ 36].

On September 27, 2013, SPS offered to allow Plaintiff to inspect the original note; however, neither Burnett nor Plaintiff ever did so [Id. ¶¶ 40-43]. Plaintiff has not made a payment to SPS since it began servicing Plaintiff's loan on December 1, 2012 [Id. ¶ 44].

On May 22, 2014, Plaintiff filed his complaint in this Court against SPS[1] [Doc. 1]. SPS moved to dismiss all claims [Doc. 11], and on October 9, 2014, this Court granted that motion in part, and denied it in part [Doc. 21]. Specifically, this Court permitted Plaintiff to pursue his claim that SPS failed to respond to the December 17, 2012 letter [Id. at 16-17, 22].

Following this Court's Order, SPS answered the complaint [Doc. 22]. The case's four-month discovery period began in November 2014. In March, before discovery concluded, SPS moved for a discovery extension [Doc. 38], which was granted [Docs. 48, 50]. In July 2015, the parties jointly moved for another extension of the discovery period [Doc. 63], which this Court granted [Doc. 65]. Discovery concluded on September 17, 2015 [see Doc. 65].

In October 2015, the parties filed a joint motion to extend the time to file for summary judgment [Doc. 82], which this Court granted [Doc. 85]. In an Order disposing of various discovery motions, this Court stated that no further discovery would be permitted without leave of the Court [Doc. 86 at 17].

On February 1, 2016, SPS filed the instant Motion for Summary Judgment [Doc. 87]. Plaintiff filed his response [Doc. 90], and SPS replied [Doc. 91]. In March 2016, Plaintiff moved to reopen

---

[1] The original complaint also named as defendants Bank of America, N.A., and Real Time Resolutions, Inc. [see Doc. 11]. This Court has since dismissed those defendants [Doc. 21].

discovery [Doc. 93], SPS filed a response [Doc. 95], and Plaintiff filed a reply [Doc. 96]. The motions before the Court [Docs. 87, 93] are fully briefed and ripe for review.

## II.  Legal Standards

### (A)  Summary Judgment

The Court will grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex v. Catrett, 477 U.S. 317, 323 (1986). "[T]he substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Only after the moving party meets this initial burden does any obligation on the part of the nonmoving party arise. Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991). At that time, the nonmoving party must present "significant, probative evidence demonstrating the existence of a triable issue of fact." Id. If the nonmoving party fails to do so, the moving party is entitled to summary judgment. United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991).

All evidence and justifiable factual inferences should be viewed in the light most favorable to the nonmoving party. Rollins v. TechSouth, Inc., 833 F.2d 1525, 1532 (11th Cir. 1987); Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987). Credibility

5

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  <u>Anderson</u>, 477 U.S. at 255. However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  <u>Id.</u>

    (B)   RESPA

Congress enacted RESPA in an effort to provide consumers with more information on the nature and costs of real estate transactions and to prevent consumers from falling prey to abusive lending practices.  <u>See</u> <u>McCarley v. KPMG Int'l</u>, 293 F. App'x 719, 722 (11th Cir. 2008).  To that end, RESPA requires a loan servicer to respond to qualified written requests ("QWR") from a borrower.  12 U.S.C. § 2605(e). An inquiry constitutes a proper QWR when it: (1) includes or otherwise enables the servicer to identify the name and account of the borrower and (2) contains a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. <u>Liggion v. Branch Banking & Trust</u>, No. 1:11-CV-1133-WSD, 2011 WL 3759832, at *3 (N.D. Ga. Aug. 24, 2011) (Duffey, J.); 12 U.S.C. § 2605(e)(1).  A QWR requesting information must seek information related to the servicing of the loan.  <u>Liggion</u>, 2011 WL 3759832, at *3; <u>Smith v. Bank of Am. Home Loans</u>, 968 F. Supp. 2d 1159, 1170 (M.D. Fla. 2013) ("A written inquiry that does not relate to servicing is not a QWR."). Servicing is defined by RESPA as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title,

and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).   Under RESPA regulations, "a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests."   24 C.F.R. § 3500.21(e)(1)(effective January 16, 2009 to July 15, 2014).

Prior to January 10, 2014, a servicer was required to provide a written response acknowledging a borrower's QWR within 20 days (excluding public holidays, Saturdays, and Sundays) and to respond substantively within 60 days (excluding public holiday, Saturdays, and Sundays), providing the borrower with the "information requested . . . or an explanation of why the information requested is unavailable or cannot be obtained by the servicer."   12 U.S.C. §§ 2605(e)(1),(2) (2011).

On January 10, 2014, the Dodd-Frank Amendments to RESPA became effective and shortened the acknowledgment deadline to 5 days and the substantive response deadline to 30 days.[2]   12 U.S.C. §§ 2605(e)(1), (2).

A servicer who fails to respond in a timely and adequate manner is liable for actual damages suffered "as a result of the failure" and potentially for statutory damages "in an amount not to exceed $2,000" "in the case of a pattern or practice of noncompliance."   12 U.S.C. § 2605(f)(1).

_____

[2]The Dodd-Frank Amendments to RESPA provided that they "shall take effect on the date on which the final regulations implementing such section take effect."   12 U.S.C. § 2605 note (Effective and Applicability Provisions).   Such regulations were implemented on January 10, 2014.   12 C.F.R. § 1024.36; Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1145 n.3 (10th Cir. 2013).

## III. Analysis

Because resolution of Plaintiff's Motion to Reopen Discovery [Doc. 93] could impact this Court's ruling on SPS's Motion for Summary Judgment [Doc. 87], this Order addresses Plaintiff's Motion first.

### (A)  Motion to Reopen Discovery [Doc. 93]

Plaintiff has moved to reopen discovery based on newly discovered evidence. Specifically, in March 2016 (while Defendant's Motion for Summary Judgment was pending in this case), Plaintiff sent SPS a request for information regarding the holder/owner of his note, and in response, SPS produced the first page of a trust document from Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-MLN1, while SPS had previously indicated that the note was owned by the SASCO MLN1 Trust. Plaintiff argues that this new trust document raises questions about the true ownership of the note. In opposition, SPS explains that it produced the Merrill Lynch Trust document as the result of a clerical error [Doc. 95]. In reply, Plaintiff complains that SPS should have provided a signed affidavit in support of its assertion that the Merrill Lynch Trust document production was a clerical error [Doc. 96].

Discovery in this matter concluded in September 2015. Moreover, even if the ownership and assignment of the note are relevant at all to a RESPA claim, the note's ownership and assignment in 2016 are not relevant to SPS's obligations, if any, triggered by Plaintiff's December 17, 2012 letter. Accordingly, Plaintiff's Motion to Reopen Discovery [Doc. 93] is denied.

8

(B)   Summary Judgment [Doc. 87]

To prove a violation of 12 U.S.C. § 2605(e), a plaintiff must show that (1) the defendant is a loan servicer; (2) plaintiff sent defendant a valid QWR; (3) defendant failed to adequately respond within the statutory period; and (4) plaintiff is entitled to damages.   See Smith, 968 F. Supp. 2d at 1170.

(i)   SPS is a Loan Servicer

First, there is no genuine dispute regarding the fact that SPS is a loan servicer that has the right to service Plaintiff's loan [Ex. 7 to Burnett Dep., Doc. 88-2 at 82].  The undisputed evidence in the record shows that SPS was assigned the servicing rights from Bank of America, N.A., effective December 1, 2012 [Id. at 83].  Although Plaintiff insinuates that there are issues with the chain of title through which SPS acquired the rights to service his loan, he has not produced any evidence to support his claim.  Moreover, it is not clear why Plaintiff contests the one element of his cause of action that SPS has conceded.  Nevertheless, the Court is satisfied that the first element of Plaintiff's sole RESPA claim is satisfied.

(ii) December 17 Letter

SPS argues that it is entitled to summary judgment because the December 17 letter did not give rise to any obligations under RESPA [Doc. 87].  In particular, the December 17 letter (1) did not request information related to servicing as is necessary for a RESPA claim, and (2) was not sent to the office address designated for QWRs. Plaintiff responds that this Court already determined the December 17 letter was a QWR in ruling on SPS's motion to dismiss, and that SPS failed to create a truly separate and exclusive office for handling QWRs [Doc. 90].

This Court's previous Order states that "Plaintiff's requests for the identity of the owner of the note and a copy of the note are sufficiently related to servicing" to survive SPS's motion to dismiss [Doc. 21 at 16]. Now, however, at the summary judgment stage, it is clear that the relevant inquiries in the December 17 letter were not "related to servicing" within the meaning of RESPA. "Servicing" under the statute is "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Requests like Plaintiff's--for the identity of the note's owner and a certified copy of the note--are beyond the scope of a loan servicer's obligations under RESPA[3]. See Jones v. Vericrest Fin., Inc., No. 1:11-CV-2330-TWT-CCH, 2011 WL 7025915, at *16-18 (N.D. Ga. Dec. 7, 2011) (Hagy, Mag. J.)(recommending dismissal of RESPA claim because correspondence asked questions about the origination of the loan rather than servicing of the loan), adopted by 1:11-CV-2330-TWT-CCH, 2012 WL 113556, at *1 (N.D. Ga. Jan. 12, 2012) (Thrash, J.); Liggion v. Branch Banking & Trust, 2011 WL 3759832, at *3 (document requests were not QWRs because they did not relate to servicing of the loan); see also Davis v. Greenpoint Mortg. Funding, Inc., No.

---

[3]Obligations to disclose the specific information that Plaintiff sought are governed by the Truth in Lending Act ("TILA"); however, there are no TILA claims before the Court. See 15 U.S.C. § 1641(f)(2) ("Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.").

10

1:09-CV-2719-CC-LTW, 2011 WL 7070222, at *3-4 (N.D. Ga. Sept. 19, 2011) (Cooper, J.) (explaining that majority of courts to have addressed the issue have concluded that RESPA does not require loan servicer to provide information concerning loan ownership, but adopting minority view and finding claim that request for identity of note holder sufficiently related to servicing to survive motion to dismiss).

Moreover, even if the requests in the December 17 letter did relate to servicing, they did not trigger any obligations for SPS under 12 U.S.C. § 2605 because the letter was not sent to SPS's designated separate and exclusive address for addressing QWRs. See 24 C.F.R. § 3500.21(e)(1) (effective January 16, 2009 to July 15, 2014). The undisputed facts show that the Hello Letter, which was received by Plaintiff, explained that QWRs had to be sent to the address listed for "Disputes/Inquires," which was P.O. Box 65277, as that was the exclusive office for handling such inquiries. Nevertheless, the December 17 letter was sent to the address for General Correspondence, P.O. Box 65250. See Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1149 (10th Cir. 2013) ("Failure to send the QWR to the designated address for receipt and handling of [QWRs] does not trigger the servicer's duties under RESPA."); and Roth v. CitiMortgage Inc., 756 F.3d 178, 181-82 (2d Cir. 2014) (same).

Neither of Plaintiff's two arguments regarding the separate and exclusive address is persuasive. That SPS referred to the address as one for "Disputes/Inquires" rather than expressly for "Qualified Written Requests," is of no consequence because the Hello Letter clearly and unambiguously gave notice that the address for

11

"Disputes/Inquires" was exclusively designated for receipt of written requests. Additionally, the fact that the address for "Disputes/Inquires" and "General Correspondence" were separate boxes at the same physical office, attended by the same employees, does not defeat SPS's summary judgment argument, because reading the statute to require a distinct physical location for resolution of QWRs would be nonsensical. Accordingly, because it is undisputed that SPS provided Plaintiff with sufficient notice of its separate and exclusive address for QWRs, and the December 17 letter was not submitted to that address, it did not trigger SPS's duties under 12 U.S.C. § 2605(e).

### (iii)    SPS's Response

Furthermore, even if the December 17 letter qualifies as a QWR triggering SPS's RESPA obligations, SPS clearly complied with the majority of those obligations. After SPS received the December 17 letter on December 24, it had 20 days, excluding Saturdays, Sundays, and public holidays (or until January 25, 2012) to acknowledge receipt, and 60 days (or until March 22, 2012) to substantively respond. SPS acknowledged receipt via (1) the December 27 letters to Plaintiff and Burnett; (2) the December 31 letter to Burnett; and (3) the January 3, 2013 letter to Plaintiff. Additionally, SPS substantively responded in part via the December 31 letter to Burnett, wherein it identified the SASCO MLN1 Trust as the owner of the note. Thus, even assuming that the December 17 letter constituted a QWR, SPS acknowledged receipt of the letter and responded substantively in part within the respective statutory time frames. SPS's only deficient response under RESPA was its failure to

12

provide Plaintiff with a certified copy of the note before March 22, 2012.

        (iv)        Damages

    Damages are a necessary element of a RESPA claim.  12 U.S.C. § 2605(f)(1) (providing that a servicer who violates RESPA shall be liable to an individual borrower in the amount equal to actual damages resulting from the RESPA violation, and any additional damages in the case of a pattern or practice, in an amount not to exceed $2,000).  Even assuming the other necessary elements of Plaintiff's RESPA claim survived summary judgment, the undisputed evidence shows that Plaintiff suffered no damages.

    Plaintiff claims that he suffered financial injury because he had to travel and hire an investigator in order to ascertain the true owner of the note [see Doc. 90 at 9]; however, such expenditures were not related to SPS's purportedly deficient QWR responses.  As SPS points out in its brief, the undisputed facts demonstrate that at the time that Plaintiff sent the December 17 letter, he and Burnett both possessed a copy of the note.  Indeed, they referred to the note's terms in the Gwinnett County quiet title petition filed before the December 17 letter.  Additionally, SPS responded to Plaintiff's request for the note's owner, and as previously discussed, there is no evidence supporting Plaintiff's suggestion that the SASCO MLN1 Trust is not the true owner of the note.  Thus, the expenditures that Plaintiff made to investigate the note's owner or terms were not necessary, and Plaintiff has failed to identify any evidence of actual injury.  See McLean v. GMAC Mortg. Corp., 398 F. App'x 467, 471 (11th Cir. 2010) ("[Plaintiffs] must present specific evidence to

establish a causal link between the financing institution's violation and their injuries.").

As Plaintiff has failed to prove a single RESPA violation, he necessarily cannot establish a pattern or practice of violations, as is necessary to support an award of statutory damages. 12 U.S.C. § 2605(f)(2). Moreover, although Plaintiff contends that he has shown a pattern or practice by way of SPS's Fed. R. Civ. P. 30(b)(6) testimony, no reasonable factfinder could conclude as such based on the testimony Plaintiff identifies. Specifically, SPS witness Mark Syphus testified as follows at his deposition in response to questioning about SPS's policies for responding to requests for copies of borrowers' notes:

> Q. And sometimes then you do not send a copy of the note; is that accurate?
>
> A. Sometimes we do not; sometimes we do.
>
> Q. So it's your policy that sometimes you do not send the note in response to a request for a copy of the note?
>
> . . . .
>
> A. It is on a case-by-case basis.
>
> Q. Okay. But when it is not provided, that is not a violation of SPS's policy; is that accurate?
>
> A. Correct.

[Mark Syphus Dep. at 44; Doc. 90-3 at 13].

This testimony is insufficient as a matter of law to support Plaintiff's claim that SPS has a pattern or practice of noncompliance with RESPA. Thus, Plaintiff has suffered no damages as is necessary to support a RESPA claim.

14

(v)  Summary

In sum, SPS has successfully demonstrated that no genuine dispute of material fact exists with respect to several essential elements of Plaintiff's RESPA claim. Accordingly, SPS is entitled to judgment as a matter of law. SPS's Motion for Summary Judgment [Doc. 87] is GRANTED.

**IV. Conclusion**

Plaintiff's Motion to Reopen Discovery [Doc. 93] is DENIED. SPS's Motion for Summary Judgment [Doc. 87] is GRANTED. The Clerk is directed to enter judgment in SPS's favor.

SO ORDERED, this ⟨8⟩ day of July, 2016.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

15